IN THE MATTER OF NUBAR WRIGHT,
ATTORNEY-AT-LAW

No. 3695

October 17, 1952.                              248 P.2d 1080.

See also 68 Nev. 324, 232 P.2d 398.

*Morse & Graves,* of Las Vegas, and *Harlan L. Heward,* of Reno, for Petitioner.

*Harvey D. Dickerson,* of Las Vegas, for Complainants.

260

## OPINION

By the Court, MERRILL, J.:

Petitioner, a duly licensed and practicing attorney of Las Vegas, Nevada, was cited for misconduct by the local administrative committee of the State Bar of Nevada for Clark County which, after hearing, made its findings and conclusions that petitioner was guilty of misconduct. After hearing and review by the Board of Governors, findings were made by that board to the following general effect:

That petitioner did on March 15, 1950 in Las Vegas, Nevada, enter into an agreement with one Wayne Carpenter to violate the laws of the State of Nevada by securing a divorce for said Carpenter without the six weeks' residence prescribed by statute, upon perjured testimony of said Carpenter corroborated by perjured testimony of a witness which petitioner agreed to provide for the purpose; that petitioner set a fee of $1,500 for the performance of these services, accepting and banking a check for $200 as retainer; that petitioner set a fee of $100 for the perjured testimony of the corroborating witness and attempted three times to make contact with that witness by telephone.

The board concluded that petitioner was guilty of misconduct and recommended disbarment. From that recommendation and those findings and conclusions petitioner has applied to this court for review.

It appears from the record that the person known as Carpenter was in fact a private detective from California privately employed by certain attorneys of Las Vegas to represent himself to petitioner as a prospective client. He had communicated with petitioner by telephone, pursuant to which conversation he had then flown to Las Vegas, been met at the airport by petitioner and taken to a hotel room for private discussion of his case. The hotel room to which he went had been secured for him in advance by his attorney employers. A microphone had there been hidden and connected to recording devices in an adjoining room. The agreement cited as misconduct was reached during the course of a four-hour conversation between petitioner and Carpenter, the whole of which was overheard by listeners in the adjoining room and was recorded and subsequently transcribed.

The record before the local administrative committee and the Board of Governors (which is now before us) included testimony of the listeners and both the transcript and the recording itself. Upon both hearings the recording was played in full. It has likewise received the attention of all members of this court and supports beyond question the findings of the board as we have set them forth.

During the course of these proceedings petitioner has asserted three principal defenses. Before the administrative committee his contention was that he had entered into his agreement with Carpenter deliberately but with no intention ever of carrying it through; that he suspected that a trap was being laid for him and acted as he did with the sole purpose of determining and exposing those who were attempting the entrapment.

Our study of the record renders it impossible for us to accept this contention. The conduct of the petitioner throughout his recorded conversation with Carpenter was not that of a man wary of entrapment. The admissions there freely made by him do not confine themselves to the instant act of misconduct but concern as well past actions and courses of conduct which certainly never would have been admitted had the petitioner had the slightest cause to suspect Carpenter. We are inescapably led to the conclusion that during the conversation in question, he dealt with Carpenter in full confidence that the man was as he represented himself to be and with every intention of carrying out his illicit agreement.

Before the Board of Governors, petitioner contended that he was so plied with liquor by Carpenter that his mind became befogged and that in entering into his agreement he did not know what he was doing; that he never would have entered into the agreement had he not been intoxicated. This defense, too, we must reject.

In the first place, it is wholly and flagrantly inconsistent with the earlier defense, made under oath before the administrative committee. A man who claims that from the outset he had suspected and deliberately set out to expose his entrappers cannot, in the same breath, be heard to say that he knew not what he was doing.

Furthermore the record again refutes this contention. Petitioner's constant admonitions as to the necessity for caution and future silence; his explorations of factual danger zones; his recognition of potential weak spots in the false story and advice as to explanations to be made thereof; all bespeak a practitioner experienced in such matters and a mind fully alert to the dangerous vulnerability of a perjured case and to the consequences of deliberate professional misconduct. Before the board, petitioner at least three times testified that intoxication overcame him during the second half of the four-hour conversation. The record demonstrates that the agreement was fully discussed during the first two hours and

was reached immediately following dinner served in the room, the consuming of which occupied approximately 30 minutes of that time.

Petitioner's principal defense before this court is that of entrapment. It is first contended that the record does not show any foundation or basis for such resort to a decoy. This contention we must reject. It is clear from the record that Carpenter's employers believed and had reasonable cause to believe not only that petitioner was a person disposed to commit the offense, but that he had already committed a similar offense on at least one occasion. That actual proof of such earlier offense does not appear in the record does not destroy the foundation of such cause for belief.

Next it is contended that the offense was committed at the instigation and subject to the persuasion and inducement of Carpenter; that the criminal design originated not with petitioner but with Carpenter himself; citing Sorrells v. U. S., 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249. We are satisfied from the record, however, that such was not the case. The record discloses that Carpenter merely presented to petitioner the opportunity to commit the offense which opportunity was freely accepted by petitioner. Carpenter's course was simply to state his problem: his need for divorce; his need for urgency; then, in effect: "That's my problem. You tell me what I've got to do 'and what it will cost." It was petitioner who then asked, "What is the maximum you can stay?"; who explained the necessity for a corroborating witness as to the fact of six weeks' residence; who outlined the perjured testimony necessary from that witness; who fixed the amount of the fee, explaining the fact that it was six times his usual charge due to the risk involved.

In this respect petitioner again refers to the use of alcohol. It is clear that a considerable amount was consumed during the course of the conversation, all of it provided by Carpenter. Petitioner contends this must be regarded as improper inducement and enticement.

In this we cannot agree. Improper it most certainly was; an inducement, however, it was not. We cannot and do not condone such use of liquor by a decoy. Could we believe that petitioner would not have submitted to the offered temptation had it not been for the liquor with which he was plied; could we but believe that his normal resistance to temptation was thereby weakened; we would not hesitate in rejecting the findings of the board. The record, however, in the respects upon which we have already remarked, does not permit us to reach such a conclusion.

Petitioner next invokes a matter of general principle and policy. Accepting that evidence secured as was that before us is not thereby rendered incompetent in a criminal proceeding, it is contended that use of these methods by agencies of the bar to secure evidence against one of its members is not to be tolerated.

Certain it is that the professional mind revolts at the invasion of professional privacy inherent in a surreptitiously recorded conversation between an attorney and his supposed client. Certain it is, too, that one cannot but be highly offended by the use of alcohol for no apparent reason other than to weaken possible resistance to a proposed entrapment. However, such matters as respect for the profession and for its dignity and the mutual courtesy and confidence of its members cannot be enforced by compulsion but must, by the bar itself, be earned by meritorious conduct and reputation. We may not, then, when our conduct is called to question, assume to ourselves such matters of special privilege as a grant of immunity from repugnant, though lawful, methods of proof.

Finally petitioner has questioned the competency of the board to act in this matter. It is pointed out that the matter was considered by the board in three separate meetings, a quorum being present on each occasion. Three of the seven members who unanimously voted upon the findings, conclusions and recommendation were

absent from the second meeting, at which time the recording was played and counsel were heard in argument. It is contended that those three members were thereby disqualified, leaving less than a quorum (six members) qualified to act. It is not contended that the transcript did not have the study of all members. In our view petitioner's contention is unrealistic and impractical. If a majority of a board of busy lawyers, serving without pay and as an arm of this court, in a proceeding of this nature taking several days, were compelled to recess every time one of them was called from the meeting or otherwise engaged, the functioning of the board might well prove an impossibility. In the absence of any showing of prejudice we must hold this contention to be without merit.

The findings and conclusions of the Board of Governors are, therefore, affirmed. We look, then, to its recommendation of disbarment. It is clear that subornation of perjury, tampering with witnesses or otherwise practicing deception upon a court by fraudulent devices is gross misconduct in the perverting or obstructing of justice and warrants disbarment. In Re Bailey, 40 Nev. 139, 161 P. 512; People v. Beattie, 137 Ill. 553, 27 N.E. 1096, 31 Am.St.Rep. 384; See 5 Am.Jur. 418, 419 (Attorneys At Law, secs. 262, 263) ; 9 Cal.Jur.Sup. 504 (Practice Of Law, sec. 58) ; Ann. 14 A.L.R. 868; 45 Am.St.Rep. 82. Our question, then, is whether mitigating circumstances exist in this matter which have escaped the Board of Governors and which would warrant reduction of the recommended penalty.

It is to be noted that the contemplated crime or unlawful practice was not actually consummated. It is recognized, however, that an attempt or conspiracy to commit a crime demonstrates moral turpitude to a like degree as the commission of the crime itself. In Re Coffey, 123 Cal. 522, 56 P. 448; In Re Shepard, 35 Cal.App. 492, 170 P. 442. The conduct of petitioner constituted more

than contemplation; more than a mere wrongful thought or indiscreet utterance; more than mere willingness or disposition to commit a wrongful act. It was in itself an overt, wrongful act comparable to conspiracy.

In his conversation with Carpenter, after dealing at length with the risk he assumed in following the proposed course; after making it clear that he would "rather lose [his] right arm than lose [his] license," petitioner stated: "Well, I take a chance any time where it's safe." From the record as to his subsequent conduct we are convinced that his failure to follow through with his agreement was due solely to the fact that his subsequent investigation of Carpenter had belatedly convinced him that the man was not what he had represented himself to be. Petitioner's actions certainly were not those of contrition guided by a sober reawakening of moral principles. Rather they were the actions of a man suddenly become wary of exposure; of a man confronted with the probability that the "chance" he had taken was not well taken; of a man repentant not of wrongful but of careless conduct.

We find nothing of mitigation in the record. We take notice of the fact that this is not petitioner's first offense. Sixteen months ago he was by this court ordered suspended from the practice of law for a period of six months for unethical conduct. In Re Wright, 68 Nev. 324, 232 P.2d 398.

It is ordered that petitioner, Nubar Wright, be disbarred from the practice of law in the State of Nevada and that his name be stricken from the roll of attorneys of this court.

BADT, C. J., and EATHER, J., concur.

ORDER DENYING PETITION FOR REHEARING