EDWIN ROBERT FROGGATT, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 6003

April 16, 1970                                   467 P.2d 1011

*William M. O'Mara,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Kathleen M. Wall,* Deputy District Attorney, Washoe County, for Respondent.

# OPINION

By the Court, MOWBRAY, J.:

The narrow issue presented for our determination on this appeal is whether the jury that found the appellant-defendant, Edwin Robert Froggatt, guilty of a violation of NRS 453.030[1] (Unlawful Sale of a Narcotic Drug), should have been instructed on the law of entrapment. Under the facts of this record, we have concluded that an instruction on entrapment should have been given; therefore, we reverse the case and remand it to the district court for a new trial.

1. *Factual Background.*

In January 1969 appellant-defendant Froggatt commenced work as a trainee craps dealer at the Nevada Lodge Gaming Casino in Crystal Bay, Nevada. He testified that during the latter part of January he met two gentlemen, Frank Clay and "C. T.,"[2] who were undercover agents for the police.[3] On several occasions in early February 1969, Clay discussed with Froggatt the use and sale of marijuana. A few days later, C. T. also discussed its use with Froggatt. Nothing else occurred until February 16, when C. T., according to Froggatt's testimony, placed four "lids" of marijuana in the spare-tire compartment of Froggatt's car, which was parked in the Nevada Lodge parking lot. C. T. then told Froggatt that he had supplied him with some marijuana and described its location in Froggatt's car. The next day, February 17, Clay introduced one Ron Garner to Froggatt. Garner, who was a Deputy Sheriff of Washoe County, sought to buy the marijuana from Froggatt, but was unable to do so. The following evening, February 18, at about 5:15 p.m., as Froggatt was leaving the parking lot in a borrowed pickup truck, Garner, riding in another car, stopped

---

[1]NRS 453.030:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in NRS 453.010 to 453.240, inclusive."

[2]"C. T.'s" full name appears nowhere in the record, and he did not testify during the trial.

[3]The record is not clear as to when C. T. officially commenced his work as an undercover agent.

Froggatt in the pickup in front of Froggatt's own car, which still had the marijuana in the spare-tire compartment. Deputy Garner again sought to purchase the marijuana from Froggatt, and this time he succeeded. During the Garner-Froggatt sale, Clay and C. T. remained seated in Garner's car. Immediately thereafter, Froggatt was arrested and charged with violating NRS 453.030, supra. He was convicted of the charge after a jury trial.

2. *The Entrapment.*

Froggatt requested the district judge to instruct the jury on the law of entrapment. The State objected, on the ground that there was insufficient evidence, express or implied, upon which the jury could have drawn any inference that Froggatt was entrapped with respect to the sale of the marijuana.[4] We do not agree. The State contends that C. T., who planted the marijuana in the spare-tire compartment of Froggatt's car, was not a police informer when he made the plant and that he did not become so engaged until the following day. There is a conflict in that evidence, as shown by Garner's testimony, and the jury should have had an opportunity to pass on the question.[5]

We have reiterated the rule in Barger v. State, 81 Nev. 548, 550, 551, 552, 407 P.2d 584, 585, 586 (1965), that:

---

[4]The State in its argument concedes that an entrapment instruction might have been proper if Froggatt had been charged with *possession* of the marijuana.

[5]"Q [by William M. O'Mara, counsel for appellant-defendant Froggatt] Let me ask you this: At the time this transaction took place and you were in your car, you mentioned that there was a Frank Clay in the car. Was there any other person in the car?

"A [by Deputy Sheriff Garner] There was.

"Q What was his name?

"A He was a confidential, reliable informant. I don't care to disclose his identity due to the fact that he is still working at this time.

"Q Isn't his nickname the same as C. T.?

"A Yes.

"Q So that both of these people were in the vehicle at that time, is that correct?

"A That's right.

" . . . .

"Q But at the time that this transaction took place there were two informants, two people that had been previously working with you in regards to narcotics enforcement or setups or however you wanted to use it, both of which were in this vehicle at that time?

"A Yes, sir."

Mr. Garner, however, in rebuttal testimony stated:

"Q [by David L. Mousel, Deputy District Attorney for Washoe County] Do you know a gentleman by the name of C. T.?

"A I do.

"Q How long have you known that gentleman?

"Citation of authority is no longer necessary for the proposition that a defendant in a criminal case is entitled to have the court instruct the jury about his theory of defense, if there is evidence to support it. The state acknowledges the rule, but suggests that Barger's testimony was a fantasy not worthy of belief and cannot qualify as 'some' evidence, 'substantial' evidence or, indeed, even as 'any' evidence; . . . We hold that a defendant in a criminal case is entitled to have the jury instructed on his theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may appear to be. People v. Carmen, 228 P.2d 281 (Cal. 1951). The jury by its verdict will decide whether the truth rests with the state or the defense."

We approve the ruling of the United States District Court of Appeals for the Fifth Circuit in Hamilton v. United States, 221 F.2d 611, 614, 615 (1955):

"The gist of the defense of entrapment is the conception of the crime by the government's agent for the purpose of prosecuting the defendant, the latter not having any previous intention to commit it. A money consideration or any other adequate motive incited by the agent to induce the crime may constitute entrapment, provided the conception of the criminal design originated with the government's agent, and was planted by him in the mind of the accused, who otherwise would not have committed the offense; but, when it is suspected that a crime is being committed, for instance, in the sale of narcotics, and the question is as to who is the guilty party, traps may be laid by affording the suspect an opportunity to sell the same in order to catch the guilty person. A suspected criminal may be offered an opportunity to transgress in such manner as is usual therein, but extraordinary temptations or inducements may not be employed by officers of the government. The charge requested by the appellant fairly stated the law, and should have been given instead of the oral equivocal instruction that left the jury without any definite applicable guide in considering the evidence on the subject of entrapment. Sorrel[l]s v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 [1932]; Butts v. United States, 8 Cir., 273 F. 35, 38, 18 A.L.R. 143

---

"A  I've known him for approximately a year.
"Q  And in what regard did you know of him?
"A  As a narcotics user.
"Q  Was he in fact employed by or used by yourself as an undercover agent?
"A  Not until after the first time he was employed—not employed, but was used by myself as an informer for any information that came *on about* the 17th of February." (Emphasis added.)

[1921]; United States v. Wray, D.C. [N.D., Ga.], 8 F.2d 429 [1925]; Swallum v. United States, 8 Cir., 39 F.2d 390 [1920]; Morei v. United States, 6 Cir., 127 F.2d 827 [1942]; Demos v. United States, 5 Cir., 205 F.2d 596 [1953]; United States v. Sawyer, 3 Cir., 210 F.2d 169, 170 [1954].

". . . To decline to reverse the judgment appealed from would be tantamount to denying the defendant a jury trial upon the issue of entrapment. Therefore, the judgment must be reversed . . . . "

In the case at hand it was possible for the jury to have found that the criminal intent originated with the State, since some of the evidence, if believed, shows not only that a State agent purchased the marijuana, but that, in addition, another State agent placed the marijuana in the defendant's car. This evidence supports the defense of entrapment, and the defendant was entitled to an instruction upon that defense.

We conclude that the jury should have had an opportunity to consider Froggatt's defense to the charge, and for that reason we reverse the case and remand it to the district court for a new trial.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.