Gibson, J.
The defendants appeal from an order of the County Court of Erie County which affirmed judgments of the City Court of Buffalo convicting them of violating section 1533 (subd. 2) of the former Penal Law, which penalizes one who “ [ojpens or maintains a place where any narcotic drug is unlawfully used ”. It is clear from the record that no crime was charged or proven; and it follows that the order appealed from must be reversed and the information dismissed.
The defendant, Leslie A. Fiedler, a writer and university professor, resided with his wife, the defendant Margaret Fiedler, and their children, in a house in Buffalo. The defendants, three of their children and two friends of the children were in the house in the late evening of April 28, 1967 when six city police officers entered under authority of a search warrant. One of the officers remained on the first floor with the. defendants as others went upstairs where they encountered the children and their friends. A police officer then conducted Dr. Fiedler upstairs to witness the search of his bedroom, and at that time a police detective, Sgt. Griambrone, entered the bedroom. Officer Amico, who was the chief of the harcotics squad of the police department, testified that ‘ ‘ at this time Dr. Fiedler said, ‘ What are you doing here anyhow?’. And, Sgt. Griambrone said, * Well, we found some pot and hashish in the house. ’ He said, ‘ Michael was smoking some marijuana on the third floor and that Kurt and Emily were smoking marijuana and hashish on the second floor. ’ And, he asked Dr. Fiedler if he permitted his children to smoke marijuana and hashish. * * * Dr. Fiedler replied that, ‘ This was his house and their house and he brought them up to think on .their own, and they were free thinkers and to do what they cared to do and what they wanted *179 to do.’” Sgt. G-iambrone testified to the same effect, and when asked whether Dr. Fiedler referred to his house in any way, replied: “ Yes, " This is my home. I want to raise my children to be individuals.’ ” These assertedly inculpatory statements, however innocuous in any other context, became the basis of the People’s case insofar as the allegedly criminal character of the Fiedler premises was concerned.
Section 1533 of the former Penal Law was headed, “ Permitting use of building for nuisance ” and provided: “A person who: 1. Lets, or permits to be used, a building, or portion of a building, knowing that it is intended to be used for committing or maintaining a public nuisance; or, 2. Opens or maintains a place where any narcotic drug is. unlawfully used; * * * Is guilty of a misdemeanor.”
The information charged that defendants ‘' did unlawfully atid wilfully permit ” their premises “to be used for the unlawfull [sic] use of narcotic drugs ”, in that, being the owners of the premises and of the third floor in particular, they did “ permit and allow ” Michael Fiedler and other named persons to smoke marijuana, “ in violation of Section 1533-2 of the Penal Law.”
Thus, although the two subdivisions of section 1533 define quite separate, distinct and unrelated offenses, the informant, in framing the charge, drew in part upon subdivision 1 and in part upon subdivision 2 without alleging all the material elements of either. Despite this clear separation of the two unrelated subdivisions, the information charged merely that defendants did “ permit ” the individuals named to smoke marijuana on the premises. The factor of permissive use, however, appears only in subdivision 1, relating to the use of a building for “ committing or maintaining a public nuisance ”, but no public nuisance was charged and none, certainly, could have been inferred. On the other hand, subdivision 2 — which defines the crime specifically charged in the information — does not penalize one who permits another to smoke marijuana, as the information charges, but one who “ [o]pens or maintains a place ” for unlawful narcotic use. There is no indication that the defendants opened or maintained the building for that use or with any other unlawful objective, or, indeed, for any purpose other than that of their marital abqde and family home, as Dr. Fiedler emphasized in the conversation now relied upon *180 as an admission of guilt. At most, his statements indicated his acquiescence in his children’s use of marijuana in the family home; this is, in fact, what the information charged and the trial testimony substantiated, but nothing in section 1533 makes this a crime.
From the history of the statute it is clear beyond cavil that its thrust was to a building maintained for the purpose there specified. Proscribed were the creation and subsequent maintenance of facilities for the .accommodation of narcotics users, who might resort thereto with some degree of regularity. The word “ maintains ” (which, interestingly enough, became “ conducts or maintains ” in the new Penal Law, infra) suggests this interpretation and excludes the notion that an isolated misuse is sufficient to stigmatize the premises. It was never contemplated that criminal taint would attach to a family home should members of the family on one occasion smoke marijuana or hashish there.
Section 1533 (subd. 2), derived from chapter 676 of the Laws of 1881, as amended by chapter 8 of the Laws of 1889, punished “ [a] person who * * * 2. Opens or maintains a place where opium, or any of its preparations, is smoked by other persons ”. This, parenthetically, suggests the “ opium den ” of fact and fiction and strongly supports the conclusion that the statute was concerned with a “ place ” maintained as a haunt for the individuals who should resort to it and with the individuals themselves only indirectly. The subdivision was amended to the form in which it stood at the time of the violation charged in this case, by chapter 526 of the Laws of 1969, the obvious purpose being to broaden the provision with respect to opium and opium preparations so as to cover the maintenance of premises for the unlawful use of any narcotic drug. Subdivision 1, upon which the information appears to have rested in part, and which prohibited the use of a building “ for committing or maintaining a public nuisance",[1] remained unchanged from the time of its enactment.
*181 The provisions of section 1533 were not transposed intact to the new Penal Law (L. 1965, ch. 1030, as amd., eff. Sept. 1, 1967). Subdivision 9 of section 240.35 of the new act, punishing as loitering one who “ [1] oiters or remains in any place with one or more persons for the purpose of unlawfully using or possessing a dangerous drug”, was derived from section 1533 and was subsequently repealed (L. 1968, ch. 668). Derived, in part, from section 1533 or from its concept is section 240.45 of the new act which renders a person ‘ ‘ guilty of criminal nuisance when * * * 2. He knowingly conducts or maintains any premises, place or resort where persons gather for purposes of engaging in unlawful conduct.” Thus, there has been preserved from the date of the enactment of the Penal Code of 1881 to the present time the factor of public or criminal nuisance, but no one suggests that such an element was present in the case at bar. After remarking that “ the conduct of resorts where people gather for illegal or immoral purposes ” is within the category of “ nuisance ” cases, the commentators state: “ Subdivision 2 deals with the illegal or immoral resort phase of nuisance, formerly covered largely by a provision penalizing conduct of that nature which * offends public decency ’ (§ 1530 [2]; see, also, § 1533, addressed to narcotics resorts). * * * The theory of this kind of nuisance is, however, that it penalizes ‘ inducing vice, rather than the vice itself ’ and, hence, is ‘ independent of any crime which may be committed ’ in conjunction therewith (People v. Vandewater, 1928, 250 N. Y. 83, 93 * * *).” (Practice Commentary by Richard G. Denzer and Peter McQuillan, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 240.45, pp. 177-178.)
That the statute is not violated by the owner’s acquiescence in an isolated misuse but, on the contrary, contemplates some time span and resort to the premises by habitues with some degree of regularity, is recognized by such few authorities $s do exist. Thus, as was held in the Criminal Court of the City of New York, in disposing of an asserted violation of subdivision 2 of section 1533: “To ‘ maintain ’ a nuisance means something more than having knowledge of its existence. It *182 means, in addition, preserving and continuing its existence ” (People v. Campbell, 45 Misc 2d 201, 203, emphasis supplied; and see Barrett v. Fook, 129 N. Y. S. 23; Burmeister v. New York City Police Dept., 275 F. Supp. 690).
The order appealed from should be reversed and the information dismissed.

. A cognate provision is this: “1. Any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft or any place whatever, which is resorted to' by narcotic drug addicts for the purpose of using narcotic drugs or which *181 is used for the illegal keeping or selling of the same, shall he deemed a public nuisance. 2. No person: shall keep or maintain such a public nuisance." (Public Health Law, § 3342.)