JAY FRED SHRADER, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 15123

September 24, 1985 706 P.2d 834

*David C. Polley,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *A. D. Demetras,* District Attorney, and *Michael P. Golden,* Deputy District Attorney, Tonopah, for Respondent.

## OPINION

By the Court, YOUNG, J.:

Appellant Jay Fred Shrader was arrested and charged with two counts of unlawful sale of marijuana (Counts I and II) and one count of maintaining a place for use or sale of marijuana (Count III). A jury convicted Shrader on all three counts. He was sentenced to two five-year consecutive sentences on Counts I and II and to ten years on Count III, running concurrently with the sentences on Counts I and II. Shrader had no record of arrests or convictions before this incident.

The two counts of unlawful sale were based upon transactions between Marcus Scott, a confidential police informant, and Shrader. Shrader met and befriended Scott in May, 1982 at the Joker Saloon in Tonopah, Nevada. Scott visited Shrader's apartment often to play pool and drink beer.

In July, 1982 Scott found himself incarcerated in the Nye County jail facing two felony counts of cheating at gaming. Scott decided to become a confidential informant and began negotiations with Nevada authorities. Under a plea agreement executed August 17, 1982, Scott pleaded guilty to a gross misdemeanor. Approximately one month later, Scott was sentenced to time served, eleven days. Probation was not imposed.

Scott, in his capacity as informant, approached Shrader on August 14, 1982 and asked Shrader where he could obtain marijuana. Scott testified that he asked Shrader about the availability of marijuana because he had seen drugs used at Shrader's apartment.

Shrader testified that although he initially told Scott he did not have any marijuana to sell, he relented after Scott told him he needed it to relax because of his recent stay in jail. On August 15, 1982 Shrader let Scott have a quarter ounce of marijuana for $45.00. This transaction was monitored by officers of the Sheriff's department who had hidden a tape recorder on Scott.

Scott and the officers set up a second buy in September, 1982. According to Shrader, Scott had been importuning him for mari-

juana for some time. On the afternoon of September 15, 1982 Shrader told Scott that he did not have anything to sell but could secure an ounce for $70.00 from someone else. Scott apparently told Shrader that he did not want to make the buy himself because he was already in trouble with the law.

Scott left Shrader's apartment and met with narcotics officers. He was fitted with a transmitter so that the officers could listen to the transaction. Scott returned to Shrader's apartment at approximately 11:30 p.m. that same night. Shrader informed him that the marijuana could not be obtained for $70.00 but would cost $100.00. Because the officers had supplied Scott with only $70.00 to make the buy, Scott told Shrader he would go home and get more money. Scott left the apartment and received additional funds from one of the officers. When Scott returned to the apartment, Shrader left with Scott's $100.00 to make the buy. Although the officers were listening to the conversation between Scott and Shrader, they did not attempt to follow Shrader in order to discover the source of the marijuana. Shrader returned with the marijuana and gave it to Scott. Shrader testified that he did not make any money on the sale. Shrader was arrested on November 2, 1982 and charged with the three counts enumerated above.

We first address Shrader's contention that he was entrapped as a matter of law into selling the marijuana to Scott. Entrapment as a matter of law exists where the uncontroverted evidence shows (1) that the state furnished an opportunity for criminal conduct (2) to a person without the requisite criminal intent. State v. Busscher, 81 Nev. 587, 407 P.2d 715 (1965).

The entrapment defense is made available to defendants not to excuse their criminal wrongdoing but as a prophylactic device designed to prevent police misconduct. "The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime." Sherman v. United States, 356 U.S. 369, 372 (1958). By permitting conviction of only those defendants predisposed to commit the offense, the defense focuses police attention on existing criminal ventures.

Although we recognize that undercover operations are often necessary to detect covert and consensual crimes, those operations must be conducted in a manner consistent with the policy of trapping only the unwary criminal, not the unwary innocent. *See Sherman,* 369 U.S. at 372. Therefore, we hold that when the police target a specific individual for an undercover operation,

they must have reasonable cause to believe that the individual is predisposed to commit the crime.[1] *See* Smith v. State, 281 N.E.2d 803 (Ind. 1972) (requiring probable cause that suspect engaged in type of criminal conduct for which trap laid). This rule is in accord with our intimations in Wyatt v. State, 77 Nev. 490, 367 P.2d 104 (1961) and In re Wright, 69 Nev. 259, 248 P.2d 1080 (1952) that the state may resort to decoys only when it has reasonable cause to believe that the target is predisposed to commit the offense. An express holding to this effect was unnecessary in those cases because evidence of the defendants' predisposition precluded the application of the entrapment defense.

In *Wright* we rejected the defendant's claim of entrapment because there was "reasonable cause to believe not only that petitioner was a person disposed to commit the offense, but that he had already committed a similar offense on at least one occasion." 69 Nev. at 263. We relied on this language in *Wyatt* where we held that the defendant could not raise the entrapment defense to a prosecution for performing illegal abortions because there was ample evidence that he had performed illegal abortions before a police decoy approached him. 77 Nev. at 495. In both cases we reiterated the widely accepted principle that the mere furnishing of an opportunity for criminal conduct does not constitute entrapment. *See Wyatt,* 77 Nev. at 493; *Wright,* 69 Nev. at 263. *See also* Sorrels v. United States, 287 U.S. 435, 441 (1932); Hill v. State, 95 Nev. 327, 332, 594 P.2d 699 (1979); W. LaFave & A. Scott, *Handbook on Criminal Law* § 48, at 369 (1972). That opportunity, however, must be presented to one with the requisite criminal intent. *See* State v. Busscher, 81 Nev. at 590.

 ██

In applying this rule to the facts of this case, we conclude that Shrader was entrapped as a matter of law. We are at a loss to discover, as was respondent's counsel during oral argument, any evidence in the record of Shrader's predisposition to sell marijuana before he was targeted for an undercover operation. Scott had no knowledge of previous sales of marijuana by Shrader, and testified that he had never asked Shrader about the availability of marijuana for sale until the day before the first transaction in August. On the day of the September sale, Scott testified that

---

[1] This requirement *is, of course, inapplicable in situations where the police* are conducting for articulable purposes proper decoy operations in a particular geographic area. Obviously, the police cannot be required to have previous knowledge of the predispositions of persons whose identities are unknown until apprehension. The danger of seducing innocent persons to criminal activity is minimized when the criminal seeks out the criminal opportunity. The previous knowledge requirement is warranted, however, in situations where the origin of the criminal intent is not so obvious, i.e. where the opportunity for criminal conduct is presented to a specific individual.

Shrader had marijuana at his apartment, but Shrader told him it was not for sale. Shrader, at Scott's request, had to make a special effort to obtain marijuana for Scott's use. Later that night, Shrader left the apartment with Scott's money to make the purchase.

We view this transaction with suspicion for two reasons. First, we are puzzled by the police officers' failure to follow Shrader to the source of the marijuana. Two officers in separate vehicles were monitoring the transaction via an electronic transmitter. Neither officer attempted to follow Shrader to the supplier. Secondly, Shrader testified that Scott had suggested Shrader purchase the ounce of marijuana from "Joe," Scott's supplier before his arrest on the gaming felonies. This, coupled with the officers' failure to follow Shrader to the source of the marijuana, leads us to question respondent's assertion that Shrader was ready and willing to make the sales.

When questioned by defense counsel as to why Scott targeted Shrader for an undercover operation, Scott testified that he knew marijuana was "available" because he had seen it used at parties at Shrader's apartment. Although an acknowledged user of marijuana, Shrader had no previous criminal record. Evidence of Shrader's previous possession of marijuana does not constitute reasonable cause to believe he was a seller.

We also view with alarm Scott's testimony regarding his perception of his duties as a confidential informant. Scott's misapprehension of the proper limits of his duties is perhaps best exemplified by the following testimony elicited on direct examination:

> Q. Okay. Prior or during your affiliation with N.D.I. being Nevada Division of Investigation, did you receive any training or instruction?
> A. Yes, I did.
> Q. What did that involve?
> A. It involved the approaching of a person that you thought might be dealing in narcotics *or even if you didn't think so,* you would ask the person: "Do you know where I could—where I can find any drugs or any smoke or marijuana," so forth and so on and then at that time they had the choice whether or not to say: "Yes, I do know where you can get some," or, "I have some."

(Emphasis added.)

This testimony convinces us that the proper limits of government activity in undercover operations must be made clear to both the police and their agents. We adopt the rule articulated above to guide the police in future investigations and to prevent " 'the seduction of innocent people into a criminal career.' "

*Wyatt,* 77 Nev. at 497 *quoting from* People v. Cummings, 296 P.2d 610, 616 (Cal.App. 1956). The absence of evidence in the record that Shrader had a predisposition to sell marijuana creates a substantial risk that the criminal intent originated in the mind of the entrapper and not in the mind of the entrapped. Therefore, because he was entrapped as a matter of law, we reverse Shrader's conviction on Counts I and II.

We next address Shrader's contention that the jury was incorrectly instructed that the defendant bears the burden of proving entrapment. Although discussion of this issue is unnecessary to our disposition of this appeal given our decision on the first issue, we address it in an effort to guide the district courts in their trial of similar cases. Entrapment, under the subjective approach applicable in this state,[2] encompasses two elements: (1) an opportunity to commit a crime is presented by the state (2) to a person not predisposed to commit the act. *See* Froggatt v. State, 86 Nev. 267, 467 P.2d 1011 (1970).

Although we have previously characterized entrapment as an affirmative defense, we have never expressly addressed the burden of proof issue. *See, e.g.,* Bonacci v. State, 96 Nev. 894, 620 P.2d 1244 (1980) (defendant may not claim jury incorrectly instructed on affirmative defense of entrapment where he did not object to instructions at trial); Wyatt v. State, 77 Nev. 490, 367 P.2d 104 (1961) (upholding district court's refusal to give entrapment instruction where no substantial evidence of entrapment and stating "[e]ntrapment is an affirmative defense . . . that a defendant must prove"). We now hold that the "affirmative" nature of the defense merely requires the defendant to put forth evidence of governmental instigation. Thereafter it is incumbent upon the state to demonstrate the defendant's predisposition. Essentially, the defendant bears the burden of production on the first element, while the prosecution subsequently bears the burden of proof on the second element. *See* State v. McKinney, 501 P.2d 378, 382 (Ariz. 1972).

In United States v. Swiderski, 539 F.2d 854 (2nd Cir. 1976) the Second Circuit reiterated its longstanding rule, first articulated by Judge Learned Hand, that the state has the burden of proving the defendant's predisposition to commit the crime when there is evidence of a state conceived opportunity. *Id.* at 857. Thus with regard to the two elements of entrapment stated above,

---

[2]The subjective approach focuses on the origin of the criminal intent. The objective approach, on the other hand, dismisses the defendant's state of mind as irrelevant and focuses on police misconduct. *See* Hill v. State, 95 Nev. 296, 330 n. 8, 594 P.2d 699 (1979); People v. Barraza, 591 P.2d 947 (Cal. 1979) (adopting objective approach).

Judge Hand concluded: "On the first question the accused has the burden; on the second the prosecution has it." United States v. Sherman, 200 F.2d 880, 882-83 (2nd Cir. 1952) *quoted in Swiderski,* 539 F.2d at 857.

We perceive in our own caselaw a process of burden shifting consonant with Judge Hand's formula. Although we construed entrapment as an affirmative defense in *Wyatt,* we also intimated that the state could resort to decoys only when it had reasonable cause to believe that the target was predisposed to commit the offense. 77 Nev. at 494. *See also* In re Wright, 69 Nev. 259, 248 P.2d 1080 (1952). The evidence in *Wyatt* demonstrated that the state had initiated or furnished an opportunity for criminal activity by sending an undercover agent to Wyatt for an illegal abortion. Thus the defendant met his burden of production as to the first element of entrapment. The burden then shifted to the state to prove that Wyatt was predisposed to commit the offense. The state met this burden by introducing evidence that Wyatt had performed illegal abortions on three previous occasions. Thus the second element, the defendant's lack of predisposition, was not established. It was incumbent upon the defendant to rebut this evidence of predisposition. Failing that, the entrapment defense was negated.

The entrapment instruction given at Shrader's trial over defense counsel's objection erroneously and simplistically stated that "[e]ntrapment is an affirmative defense which the defendant must prove." The jury went uninformed that Shrader bore only the burden of production while the state ultimately bore the burden of proof. Therefore, we hold that the district court erred in refusing to give the defendant's proposed instruction which told the jury it must acquit Shrader unless it found he had "the previous intent or purpose to commit [the] offense . . . charged."

Shrader also challenges his conviction on Count III for opening or maintaining a "place for the purpose of unlawfully selling, giving away or using any controlled substance." NRS 453.316(1). Shrader argues that the district court erred in refusing to instruct the jury that it could find a places of use violation only if the primary purpose of Shrader's apartment was for drug use.

Respondent, on the other hand, contends that furnishing or making accessible a place for drug use is all that is required by the statute. Thus respondent argues that evidence of three instances of marijuana use at Shrader's apartment are sufficient to support the conviction. We disagree.

First, we note that criminal statutes must be liberally construed

in favor of the accused when resolving ambiguities. Demosthenes v. Williams, 97 Nev. 611, 637 P.2d 1203 (1981). Therefore, the words "opens" and "maintains" in NRS 453.316(1) must be liberally construed in favor of Shrader.

Second, we approve of the New York Court of Appeals decision in People v. Fiedler, 286 N.E.2d 878 (N.Y. 1972), holding that a statute similar to NRS 453.316(1) "contemplat[ed] some time span and resort to the premises by habitues with some degree of regularity." Id. at 880. The Fiedler court noted that the object of the statute was the " 'opium den' of fact and fiction." Id. at 879.

We conclude as a matter of law that the incidents of marijuana use cited by respondent are too isolated to establish that Shrader opened or maintained his apartment for the purpose of distributing or using drugs. Shrader rented his apartment for use as a residence. He shared the apartment with a roommate. There is no evidence in the record that Shrader opened or maintained his apartment as a profit-making marijuana den. Therefore, we reverse his conviction on Count III.

Shrader's remaining contentions are either without merit or unnecessary to the disposition of this appeal given our decision that he was entrapped as a matter of law and that the evidence is insufficient to support a conviction under NRS 453.316(1). Accordingly, we reverse Shrader's conviction on all three counts and remand with directions to set aside the judgement of conviction and discharge the appellant.

SPRINGER, C. J., and MOWBRAY and STEFFEN, JJ., concur.

GUNDERSON, J., concurring:

Although I concur in the result reached by my brethren, I feel impelled to tender two observations of my own.

First, I note that the charges against Shrader were predicated upon allegations of "sale." It appears clear from the record that Shrader acted, not for himself, but as a "purchasing agent" for Mark Edward Scott in certain of the transactions alleged.[1] Hence,

---

[1]The following is an excerpt from a verbatim transcript of Scott's testimony:

 Q. Okay. So, it's your intention that as soon as you bring back the thirty more dollars that he can go and get that narcotics for you, right?
 A. Yes.
 Q. And you do bring the thirty dollars?
 A. Yes, I do.
 Q. And he leaves?
 A. Yes, he does.
 Q. There is no doubt in your mind that he's going to buy the narcotics strictly for you at your request, is there?

quite aside from the issue of entrapment, which the majority opinion addresses, it seems to me that the "purchasing agent" defense to these charges was established as a matter of law. *See* Roy v. State, 87 Nev. 517, 489 P.2d 1158 (1971).

Second, the record reflects that Scott is a person of dubious character. It appears that he has been accustomed to deriving at least part of his livelihood through cheating at licensed gaming establishments. Thus, in this jurisdiction, where a tourist-oriented economy requires Nevada to maintain honest legal gaming, Scott must be deemed a highly undesirable, albeit low-level social predator. At the time Scott decided to purchase his freedom by undertaking to entrap his friends, Scott was in jail, awaiting trial on two felony cheating charges which could have resulted in his imprisonment for a total of 20 years.

By contrast to Scott, it appears that appellant Shrader has no criminal history. It seems he has been honestly and quite regularly employed. While the record indicates that Shrader has been a marijuana user, it does not appear that he ever has been a seller or trafficker for profit. Hence, I am puzzled how our social structure is served when an actual criminal like Scott is released from accountability for his known depredations, in exchange for manufacturing charges against persons like Shrader. It seems to me that Nevada's costly prison facilities could better be utilized to protect the gaming industry from the likes of Scott.

---

A. *No.*
Q. *You gave him a hundred dollars, did you not?*
A. *Yes.*
Q. *To buy some narcotics?*
A. *Yes.*
Q. And to leave—and he left?
A. Yes.
Q. *As far as you know, he was going to go buy some narcotics for you at your request?*
A. *Yes.*

(Emphasis added.)