The Honorable Jim Stallcup Prosecuting Attorney Third Judicial District 225 W. Elm, P.O. Box 627 Walnut Ridge, AR 72476
Dear Mr. Stallcup:
This is in response to your request for an opinion on the legality of a "reverse undercover operation."[1] My research has resulted in only one Arkansas case that involves a reverse undercover operation. It is an unpublished decision, and it does not address the legality of the operation. See Barnes v. State, 1987 WL 29245 (Ark.App.). A reverse sting operation is explained in Barnes as a situation where "undercover police officers sell drugs in an effort to identify persons dealing in narcotics." Id.
Your question requires an analysis of the "Uniform Controlled Substances Act," the Arkansas statute on "entrapment" and the judicial interpretation thereof, and any cases discussing the constitutionality of such operations. We should begin our analysis with the Uniform Controlled Substances Act, which provides in relevant part:
 (a) Except as authorized by subchapters 1-6 of this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance.
A.C.A. 5-64-401 (Repl. 1993).
A police officer selling a controlled substance would violate the Act, unless the sale was "authorized by this chapter." An exception to prosecution under The Uniform Controlled Substance Act is authorized by subchapter five:
 No liability is imposed by subchapters 1-6 of this chapter upon any authorized state, county, or municipal officer, engaged in the lawful performance of his duties.
A.C.A. 5-64-506(c) (Cum. Supp. 1993).
Neither a statute nor a court of Arkansas has addressed whether selling drugs in a reverse sting operation is a "lawful performance" of an officer's duties that is exempt under section 5-64-506. Only a court, therefore, could decide this issue conclusively.
The general powers of law enforcement officers, listed in the Uniform Controlled Substance Act, do not explicitly include the power to sell controlled substances in an effort to enforce the Act. See A.C.A. 5-64-501 (Repl. 1993). The section includes a broad provision, however, which states that a law enforcement officer may, "perform other law enforcement duties as the director[2] designates." Id. The commentary to this section states that it is intended that those charged with enforcing the Uniform Controlled Substances Act have "full enforcement authority."
The Uniform Controlled Substance Act provides for local funding for undercover police work, and does expressly recognize the legality of law enforcement officers buying controlled substances. The statute reads:
 Any municipality or county may allocate and expend funds for undercover work done in connection with attempts to apprehend violators of the Uniform Controlled Substances Act, subchapters 1-6 of this chapter, or for purchases of a controlled substance when purchased by a law enforcement officer for the purpose of apprehending violators.
A.C.A. 5-64-708 (Cum. Supp. 1993).
The Act explicitly provides for law enforcement officers to buy controlled substances in the course of apprehending criminals. It may, in my opinion, be reasonably concluded that the act does not prohibit law enforcement officers from selling controlled substances in an effort to apprehend violators. If offering to sell a controlled substance is a "lawful performance of law enforcement officers' duties," then it would be an exception under section 5-64-506(c) and not violative of the Uniform Controlled Substance Act. When a law enforcement officer who is otherwise lawfully carrying out his duties, sells or offers to sell a controlled substance, he probably lacks the requisite criminal intent to be convicted of delivery under the Act. See Berry v. State, 263 Ark. 446,565 S.W.2d 418 (1978) (where the court says that "the state must prove that the accused possessed a specified quantity of a particular drug with the intent to deliver that drug").
In light of the foregoing, it is my opinion that a reverse sting operation does not violate the "Uniform Controlled Substance Act." This conclusion however, does not end the inquiry.
Research reveals that in most cases involving a reverse undercover operation the issue is entrapment. The Arkansas statute addressing entrapment is A.C.A. 5-2-209 (Repl. 1993). It provides as follows:
 (a) It is an affirmative defense that the defendant was entrapped into committing an offense.
 (b) Entrapment occurs when a law enforcement officer or any person acting in cooperation with him induces the commission of an offense by using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.
The state of North Dakota has held that a reverse sting operation is entrapment as a matter of law. State v. Kummer,481 N.W.2d 437 (N.D. 1992). Other states have similar holdings, making these operations illegal. See State v. Johnson, 127 N.J. 458, 606 A.2d 315 (1992); Kemp v. State,518 So.2d 656 (Miss. 1988); Baca v. State, 106 N.M. 338, 742 P.2d 1043
(1987); Evans v. State, 550 P.2d 830 (Alaska 1976); Lynn v. State, 505 P.2d 1337 (Okla.Crim.App. 1973); Froggatt v. State, 86 Nev. 267, 467 P.2d 1011 (1970).
While the courts of Arkansas have not addressed entrapment with regard to a "reverse" undercover operation, many Arkansas cases have addressed entrapment in undercover operations generally. One case has held that entrapment is ordinarily a fact question for the jury, and entrapment as a matter of law is not established unless there are no factual issues present. See Wedgeworth v. State, 301 Ark. 91, 782 S.W.2d 357 (1990). See also McCaslin v. State, 298 Ark. 335, 767 S.W.2d 306 (1989) (holding that when testimony of accused is not rebutted by evidence of the state, entrapment as a matter of law is not required to be found).
The Arkansas Supreme Court has consistently held that merely affording one the means and opportunity to do that which he is otherwise ready, willing, and able to do does not constitute entrapment. See Fight v. State, 254 Ark. 927, 497 S.W.2d 262
(1973). See also Sumner v. State, 35 Ark. App. 203,816 S.W.2d 623 (1991). In Sumner the court rejected appellants theory of entrapment. Appellant's theory was that because the officer simulated smoking marijuana with him, he was not afraid to obtain drugs for the officer. The court said that this did not constitute persuasion likely to cause normal law-abiding persons to commit the offense.
Therefore, absent a decision from the Arkansas Supreme Court, it is my opinion that a reverse undercover operation does not constitute entrapment as a matter of law in Arkansas. It may be necessary to evaluate the circumstances of a given factual instance, however, to determine if entrapment as a matter of fact has occurred.
My research has not uncovered a United States Supreme Court opinion dealing with the constitutionality of reverse undercover operations. There is authority, however, to support the proposition that the operation does not violate the United States Constitution. In a case where "entrapment" was at issue, the United States Supreme Court stated the following:
 [T]he infiltration of drug rings and a limited participation in their unlawful present practices . . . is a recognized and permissible means of investigation . . . [which] can hardly be said to violate fundamental fairness or shocking to the universal sense of justice.
U.S. v. Russell, 411 U.S. 423 (1973).
A violation of due process under the fifth amendment may be alleged by a defendant separately from an entrapment defense. It has been stated, however, that "due process outlaws only outrageous behavior, which is not merely distasteful but so fundamentally unfair as to be unconstitutional." U.S. v. Swanger, 679 F. Supp. 542, 551
(W.D.N.C. 1988) (citations omitted). My independent research has not uncovered a case where a due process attack on a reverse undercover operation has prevailed.
The legality of reverse undercover operations has been squarely at issue in only a few federal cases.[3] A fifth circuit court rejected appellant's claim that the government's reverse sting operation was outrageous government misconduct, violating due process. U.S. v Ivy, 973 F.2d 1184 (5th Cir 1992). The court stated that the due process defense was available in "only the rarest and most outrageous circumstances." Id. (citing United States v. Stanley,765 F.2d 1224, 1231 (5th Cir. 1985)). In a federal district case the appellant argued that there was no statutory authority or any other legal basis which authorized the government to distribute controlled substances, but again this argument was rejected by the court. U.S. v. Mustakeem, 759 F. Supp. (W.D.Pa. 1991). See also U.S. v. Swanger, 679 F. Supp. 542 (W.D.N.C. 1988) (government using mail to send child pornography material to defendant in a reverse sting operation does not amount to outrageous conduct violating due process).
It is therefore my opinion, in light of the foregoing, that a reverse undercover violation does not, in and of itself, violate the "Uniform Controlled Substances Act," constitute entrapment as a matter of law, or violate the U.S. Constitution as a matter of law. Of course, a conclusive response with regard to a given factual scenario would require reference to all the surrounding facts and circumstances.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely, WINSTON BRYANT Attorney General
WB:ddm/cyh
[1] A reverse undercover operation is also known as a "reverse sting operation."
[2] The director refers to the Director of the Arkansas Department of Health or his duly authorized agent. A.C.A.5-64-101(u) (Repl. 1993).
[3] Two eighth circuit cases from Arkansas involve reverse undercover operations, but neither discuss the legality of the operations. See U.S. v. Nichols, 986 F.2d 1199 (8th Cir. 1993) and U.S. v. Reeves, 730 F.2d 1189 (8th Cir. 1984).