THE STATE OF NEVADA, Appellant, *v.* LYNETTE LAVERNE STULL, Respondent.

No. 25821

January 4, 1996                                                   909 P.2d 1180

*Frankie Sue Del Papa,* Attorney General, and *John E. Simmons,* Deputy Attorney General, Carson City, for Appellant.

*Fred H. Atcheson,* Reno, for Respondent.

## OPINION

By the Court, ROSE, J.:

On the morning of October 8, 1993, respondent Lynette Laverne Stull (Lynette) bailed Howard Stull (Stull) out of Washoe County Jail. Just hours before, Stull had escaped from the Northern Nevada Restitution Center (NNRC), where he had been incarcerated. The Reno police arrested him that morning for

shoplifting, and he gave them a false name. Lynette bailed him out under that name. Lynette claims that she thought she was bailing Stull's friend out and that she never saw Stull that morning. Lynette and Stull were arrested two weeks later at a house in Seattle, Washington.

The State charged Lynette with two felonies, aiding a prisoner to escape and concealing an escaped prisoner, and one gross misdemeanor, conspiracy to escape. The justice court bound her over for trial. She petitioned the district court for pretrial habeas relief and filed a motion to dismiss all of the charges. The court granted the latter, and the State appealed.

We conclude that given the circumstances under which Lynette bailed Stull out of jail, she can be prosecuted for aiding in his escape. We therefore reverse the district court's order and remand this case for further proceedings.

## *FACTS*

The following evidence was presented to the justice court at the preliminary hearing and to the district court at the hearing on the motion to dismiss. Stull was an inmate at NNRC in October 1993. Lynette lived in Sparks at that time and visited Stull regularly, indicating that she was his wife and signing the visitor's log as Lynette Stull. She visited him on the afternoon of October 7, 1993, and spoke with him on the phone the same night. Sometime during the night of October 7 or the morning of October 8, Stull escaped from NNRC.

At 6:30 a.m. on October 8, a Reno police officer arrested Stull for shoplifting at the Reno Hilton. Stull identified himself to the officer as Charles Benjamin Wilson, and although the officer suspected Stull was lying, she booked him under this name. At 9:48 a.m. the same day, Lynette paid $315 to bail 'Wilson' out of Washoe County Jail. She did so under the name of Lynette Brown. Lynette testified that she and Stull were not married, but that she had lived with him for more than eight years and was his common law wife; she considered Brown her legal name. She also testified that she did not know 'Wilson' was actually Stull at the time she bailed him out. She testified that Stull called her around 8:30 a.m. the morning of October 8 and asked her to bail out his friend, Charles Benjamin Wilson. The State did not present evidence to establish that Lynette and Stull saw each other at the jail.

Around 9:30 a.m. on October 8, staff at NNRC could not account for Stull. The facility was locked down at 10:00 a.m., and an emergency count confirming his absence was completed by 10:25 a.m. Lynette went to NNRC around 1:00 p.m. that day and was told that Stull had escaped. She responded that she had

not seen Stull since the day before and had not spoken to him that day. An NNRC officer and Sparks police visited Lynette at her home around 2:30 p.m. that afternoon. Lynette again denied seeing or talking to Stull that day. Stull was not found at her home.

On October 22, 1993, Lynette's vehicle was located in Seattle. Stull and Lynette were arrested that day at the house where the vehicle was parked. Lynette was found in the backyard of the house with her three dogs. When Seattle police asked her identity, she said Lynette Brown. When asked about Stull, she told the police that she had not seen him for about a year. The police noticed someone through a basement window of the house. A Seattle police officer testified that when he asked the owner of the house if Stull was there, the owner said, "They arrived last night." Stull was found in the basement. The defense offered an affidavit from the owner declaring that Lynette had arrived at the house the morning of October 22, sometime after Stull had gotten there. Lynette testified that Stull had called her to come to Seattle, that she had arrived at the house when everyone was sleeping, and that a few hours later, when she was arrested, she was unaware that Stull was there. Stull was released on bail in Seattle and has vanished.

The State of Nevada charged Lynette with aiding a prisoner to escape, a felony violation of NRS 212.100; concealing an escaped prisoner, a felony violation of NRS 212.130; and conspiracy to escape, a gross misdemeanor violation of NRS 199.480, 212.090, and 212.095. Lynette moved to dismiss, and the district court held a hearing on the motion. The court granted the motion because it did not know the answer to certain legal questions. Three issues concerned the court. First, can Lynette be liable for bailing an escapee out of jail? Second, does the statute defining accessories to a crime apply to the relationship that Lynette and Stull had? Third, does this case arise out of a bail contract with the Washoe County Sheriff, rather than an escape from the custody of the Nevada Department of Prisons (DOP)?

## DISCUSSION

*Whether Lynette can be criminally liable for bailing an escapee out of jail*

NRS 212.100 provides in part:

> Every person who, with intent to effect or facilitate the escape of a prisoner, whether the escape is effected or attempted or not, . . . aids or assists a prisoner in escaping or attempting to escape from the lawful custody of a sheriff or other officer or person [is guilty of a crime].

We conclude that if Lynette knowingly bailed Stull out of jail, this action would constitute intentionally assisting a prisoner to escape from the lawful custody of the DOP.

To avoid this conclusion, Lynette asserts that her alleged assistance to Stull came after his escape from DOP custody was complete. Escape is a continuing offense. Campbell v. District Court, 101 Nev. 718, 723, 710 P.2d 70, 72 (1985), *appeal dismissed,* 476 U.S. 1154 (1986). However, Lynette argues that the holding in *Campbell* applies only to the escapee and only to the running of the statute of limitations. She cites U.S. v. Vowiell, 869 F.2d 1264 (9th Cir. 1989), for support. *Vowiell* concluded that United States v. Bailey, 444 U.S. 394 (1980), which held that escape is a continuing offense and which *Campbell* relied on, "deals only with the law of escape as it relates to the *escapee,* and not at all with assisting an escape, nor with a conspiracy to assist an escape." *Vowiell,* 869 F.2d at 1269. Under federal statutory law, the crime of assisting an escape is distinct from the crime of harboring or concealing an escaped prisoner. This fact was central to the *Vowiell* court's conclusion that escape was not a continuing offense in regard to assisting an escape. *Id.* at 1267-68, 1269.

The Nevada Legislature has also distinguished the crimes of aiding an escape and concealing an escaped prisoner. NRS 212.100; NRS 212.130. Therefore, we agree that it is not appropriate to consider escape a continuing offense in regard to liability for assisting an escape. However, *Vowiell* does not apply to the facts of the instant case because Stull's escape was not complete at the time Lynette allegedly assisted him.

The issue in *Vowiell* was whether a co-conspirator's hearsay statement was admissible against the accused. Vowiell was an inmate charged with assisting the escape and conspiring to assist the escape of three other inmates. *Id.* at 1266. The hearsay statement was made four days after the three inmates cut through a fence and fled the correctional institute in Pleasanton, California, and while they were still at large; one had reached San Francisco and two had reached Bakersfield. *Id.* at 1265. The Ninth Circuit Court reasoned that the escapees had reached temporary safety by the time the hearsay statement was made, so the conspiracy to assist the escape had ended, and therefore the co-conspirator exception to the hearsay rule did not apply. *Id.* at 1267-68. The court concluded that at this point, "[a]ny further assistance could have, at most, constituted harboring or concealing." *Id.* at 1268. The charged conspiracy did not encompass this uncharged offense. *Id.*

By contrast, in this case Lynette's alleged act of assistance occurred within hours after Stull fled from NNRC, when he was still in Reno and still had not reached a place of temporary safety. In fact, he was being held in jail, in imminent danger that authorities would discover his true identity and status as an escaped prisoner. Bailing him out under these circumstances could constitute assisting his escape.

Lynette also claims that Stull had already escaped the "lawful custody" of DOP by the time he was arrested at the Reno Hilton; therefore, she could not have violated NRS 212.100. She reasons that by bailing Stull out of jail, she lawfully secured his release only from the custody of the Washoe County Sheriff. She invokes the rule of lenity for statutory interpretation of criminal statutes. Shrader v. State, 101 Nev. 499, 505-06, 706 P.2d 834, 838 (1985) (criminal statutes must be liberally construed to favor the accused in resolving ambiguities).

Lynette's reading of NRS 212.100 ignores the analysis of the offenses of escape and aiding an escape which *Vowiell* and other courts have made. Furthermore, her reading would, if followed, lead to absurd results. Moody v. Manny's Auto Repair, 110 Nev. 320, 325, 871 P.2d 935, 938 (1994) (a statute should always be construed so as to avoid absurd results). Lynette asserts that once Stull made his way out of the prison facility, he was no longer in the custody of DOP under the statute. Following this construction, if she had been waiting for Stull in a car across the street from the facility and driven him away, she would not be liable for aiding his escape because he would no longer have been in the custody of DOP the moment he was beyond the bounds of NNRC.

Per *Vowiell*, the crime of aiding an escape ends once the escapee reaches temporary safety. *Vowiell*, 869 F.2d at 1268. " 'When the physical control has ended by flight beyond immediate active pursuit, the escape is complete. After that aid to the fugitive is no longer aiding his escape.' " *Id.* (quoting Orth v. United States, 252 F. 566, 568 (4th Cir. 1918)). Here, Lynette bailed Stull out around 9:48 a.m. As noted, he had not reached temporary safety—he was confined in jail. He had not fled beyond immediate active pursuit because he was still in Reno and such pursuit did not even commence until around 10:00 a.m., when NNRC staff locked down the facility and began an emergency count. We conclude that Stull's escape from NNRC was not complete until sometime after he was released from the jail. Therefore, if Lynette intentionally bailed him out of jail knowing his true identity, she aided in his escape.

Lynette also asserts that in posting bail, her liability is limited

to that of a surety, as set forth in the bail bond. She offers no authority for this proposition. The district court's concern with the bail contract and which entity it was with is misplaced. We do not see how posting bail and assuming the attendant civil liability could nullify or preclude criminal liability that might arise from that posting any more than driving a car could limit a driver's liability to motor vehicle and traffic laws in the context of driving an escapee away from a prison.

The record shows that a few hours after Stull made his way out of NNRC, he phoned Lynette and she bailed him out of Washoe County Jail. In doing so, she identified herself as Lynette Brown rather than Lynette Stull—the name which she normally used and the name which she shared with the escapee. Later that day, she told prison authorities that she had not talked to Stull that day, even though she later admitted that he had called her on the phone that morning and had her bail someone out of Washoe County Jail. In light of this record, we conclude that the State has made out a legally and factually sufficient case for the prosecution of Lynette for the criminal offense of aiding Stull's escape.

*Whether sufficient evidence of concealing an escaped prisoner exists to bind Lynette over for trial*

In her motion to dismiss, Lynette challenged the sufficiency of the evidence to bind her over for trial on the charge of concealing an escaped prisoner. The district court did not rule on this issue, and Lynette is free to raise this issue again after remand of this case.

*Whether the law of accessories and Lynette's alleged common law marriage to Stull are relevant*

The district court queried whether NRS 195.030, which defines accessories to a crime, applied in this case. NRS 195.030 states that the wife of an offender is not chargeable as an accessory to a crime, and Lynette claims to be Stull's common law wife. However, this line of reasoning is irrelevant because the State did not charge Lynette as an accessory.

## CONCLUSION

The district court erred in dismissing this case for the reasons it stated. If Lynette bailed 'Wilson' out of jail knowing that 'Wilson' was Stull, she assisted in Stull's escape from NNRC. Stull's escape was not complete at that time because he had not reached temporary safety. Lynette's bail contract with the Washoe County Sheriff does not preclude her prosecution.

Accordingly, we reverse the district court's order and remand for further proceedings.

STEFFEN, C. J., and YOUNG and SHEARING, JJ., concur.

SPRINGER, J., dissenting:

I agree with the trial court. I do not see how the bailed[1] prisoner could be said to have "escaped" when he was voluntarily released by his jailers. If the prisoner did not *escape*, Stull could not be guilty of "aid[ing] or assist[ing] a prisoner in escaping."

It may be that Stull was guilty of some kind of criminal misconduct, but it was not assisting an "escape." Stull bailed out of jail a body called "Wilson." It happened that the body was really named "Stull." Whatever the name of the body, it got out of jail by virtue of lawful process and not by escape. A jailer's negligent release of the wrong person from custody can never, in my view, fall into the category of "escape."

---

[1]The verb "bail" means to "set at liberty a person arrested or imprisoned." *See* Black's Law Dictionary 127 (5th ed. 1979). There was no need here for the prisoner to *escape*—he was "set at liberty" by the authorities.