VINCENT WALT DePASQUALE, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 18169

July 14, 1988                                                    757 P.2d 367

*Ward & Maglaras,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, and

*John Ham,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

By the Court, YOUNG, J.:

Appellant, Vincent DePasquale, and his co-defendant, Randall DeBelloy, were arrested on May 1, 1983, and charged with larceny from the person. The case was tried before a jury, and both DePasquale and his co-defendant were convicted. We affirm that judgment of conviction.

Four officers on the LVMPD's S.C.A.T. Unit (Street Crime Attack Team) were performing a decoy operation near the intersection of Fremont Street and Casino Center Blvd. in Las Vegas on April 30, 1983, at 11:45 p.m. Officer Debbie Gautwier was the decoy, and Officers Shalhoob, Young, and Harkness were assigned to "back-up."

Officer Gautwier was dressed in plain clothes and was carrying a tan shoulder bag draped over her left shoulder. Within one of the side, zippered pockets of the bag, she had placed a $5 bill and $1 bill wrapped with a simulated $100 bill. The money, including the numbers of the simulated $100 bill, were exposed so as to be visible to persons near by; however, the zipper was pulled tight against the money so as to require a concentrated effort to remove it.

Officer Young, also in plain clothes, was standing approximately six to seven feet away from Officer Gautwier (the decoy), near the entrance of the Horseshoe Club, when Randall DeBelloy approached Officer Gautwier from behind and asked if he could · borrow a pen. Officer Gautwier stated that she did not have a pen, and DeBelloy retreated eight to ten feet. Within a few seconds he approached a second time, asking for a piece of paper. Again the response was "no." During these approaches Officer Young observed DeBelloy reach around Officer Gautwier toward the exposed cash.

DeBelloy again retreated eight to ten feet from Officer Gautwier. He then motioned with his hand to two men who were another eight to ten feet away, and the trio huddled together for 15 to 30 seconds. As DeBelloy talked with the two men, he looked up and over in the direction of Officer Gautwier. Vincent DePasquale was one of the two men who joined DeBelloy in this huddle.

While this trio was conversing, Officer Gautwier had been waiting for the walk signal at the intersection. When the light changed, she crossed Fremont Street and proceeded southbound on the west sidewalk of Casino Center Blvd. DePasquale and DeBelloy followed her, 15 to 20 feet behind.[1] After crossing the street, Officer Gautwier looked back briefly and saw DeBelloy following her. DePasquale was four to seven feet behind DeBelloy and to his right.

As they walked in this formation, DePasquale yelled out, "Wait lady, can I talk to you for a minute." As Officer Gautwier turned to her right in response—seeing DePasquale whom she identified in court—DeBelloy took a few quick steps to her left side, took the money with his right hand and ran. DeBelloy was arrested, with the marked money in his possession, by Officers Harkness and Shalhoob. DePasquale was arrested by Officers Gautwier and Young. Both were charged with larceny from the person and convicted by a jury.

DePasquale argues that he was entrapped, that the district court erred in its instruction to the jury on the law of entrapment, that the evidence fails to support the verdict, and that the sentence of ten years is disproportionate and, therefore, cruel and unusual.

In Shrader v. State, 101 Nev. 499, 504, 706 P.2d 834, 837 (1985), we stated that "entrapment encompasses two elements: (1) an opportunity to commit a crime is presented by the state (2) to a person not predisposed to commit the act." Thus, this subjective approach focuses upon the defendant's predisposition to commit the crime.

In both Moreland v. State, 101 Nev. 455, 705 P.2d 160 (1985), and Oliver v. State, 101 Nev. 308, 703 P.2d 869 (1985), the decoys were disguised as intoxicated or sleeping vagrants. Their money was exposed temptingly from pockets which were readily accessible. Similarly, in Sheriff v. Hawkins, 104 Nev. 70, 752 P.2d 769 (1988), we held that the defendant had been entrapped when the decoy was not disguised as a vagrant but rather was well dressed; however, paralleling *Moreland* and *Oliver,* the decoy was apparently helpless, intoxicated, and feigned unconsciousness with cash hanging from his pocket. It is this degree of

---

[1]The third man left the huddle and walked away, having no further involvement in the crime.

vulnerability, exemplified in *Hawkins, Moreland,* and *Oliver* by the decoy's feigned lack of consciousness, which cloaks any suggestion of the defendant's predisposition. Furthermore, the entire scenario of the decoy operations was devoid of any relation to an identified crime pattern.

In contrast, in the present case, the cash, although exposed, was zipped tightly to the edge of a zippered pocket, not hanging temptingly from the pocket of an unconscious derelict. Admittedly, the money was exposed; however, that attraction alone fails to cast a pall over the defendant's predisposition. The exposed valuables (money) were presented in a realistic situation, an alert and well-dressed woman walking on the open sidewalks in the casino area. The fact that the money was exposed simply presented a generally identified social predator with a logical target. These facts suggest that DePasquale was predisposed to commit this crime. Furthermore, the fact that DePasquale had no contact with the decoy but rather succumbed to the apparent temptation of his co-defendant to systematically stalk their target, evidences his predisposition.

We hold that the jury was properly instructed on the law of entrapment, *see* Hill v. State, 95 Nev. 327, 331, 594 P.2d 699, 709 (1979), and that the jury's finding of guilt is supported by sufficient evidence, *see* Hern v. State, 97 Nev. 529, 531, 635 P.2d 278, 279 (1981); Edwards v. State, 90 Nev. 255, 258-259, 524 P.2d 328, 331 (1974).

Lastly, DePasquale complains that his sentence was disproportionate to the crime and, therefore, cruel and unusual punishment. In Schmidt v. State, 94 Nev. 665, 668, 584 P.2d 695, 697 (1978), we stated that statutes enacted by the state legislature are presumed valid; however, a sentence is unconstitutional "if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. . . ." While the punishment authorized in Nevada is strict, it is not cruel and unusual. Furthermore, we conclude that the trial judge did not abuse his discretion in sentencing DePasquale to the maximum term under this statute. Deveroux v. State, 96 Nev. 388, 390, 610 P.2d 722, 723 (1980).

We have fully examined the remaining issues raised by appellant and conclude they are without merit.[2] Accordingly, we affirm the judgment of conviction.

---

[2]We note that the "appropriate vehicle for presenting a claim of ineffective assistance of counsel is through post conviction relief." Gibbons v. State, 97 Nev. 520, 522–523, 634 P.2d 1214, 1216 (1981).

GUNDERSON, C. J., and SPRINGER and MOWBRAY, JJ., concur.

STEFFEN, J., concurring:

I respectfully concur in the result.