RICHARD WILLIAM MILLER, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 43192

April 28, 2005                    110 P.3d 53

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

*Per Curiam:*

This appeal arises out of an undercover decoy program initiated by the Las Vegas Metropolitan Police Department (LVMPD). The decoy program was designed to combat an increase in street-level robberies occurring in downtown Las Vegas. A street-level robbery is a person-to-person crime where one person walks up to another and either robs them or picks their pocket.

As part of the decoy operation, Detective Jason Leavitt disguised himself as an intoxicated vagrant to blend in with transient persons that reside in certain areas of Las Vegas. Detective Leavitt carried twenty one-dollar bills in a pocket and left a small portion of the bills exposed. This allowed someone standing close to him to see the money, but the bills were hidden well enough that they did not attract the attention of every passerby. Detective Leavitt wore a monitoring device that allowed surveillance and arrest teams to hear what Detective Leavitt heard and said. When Detective Leavitt gave a predetermined signal, arrest teams would approach the scene and apprehend the suspect.

On July 29, 2003, Detective Leavitt was dressed in black jeans, a dirty t-shirt, a short-sleeved flannel shirt, and a baseball cap.

Twenty one-dollar bills were folded inside the breast pocket of the flannel shirt so that only the tips of the bills were exposed. Detective Leavitt rubbed charcoal on his face to appear dirty and wiped beer on his neck to give off the odor of alcohol. He also walked with a limp and carried a can of beer to appear intoxicated.

Detective Leavitt positioned himself on the 200 block of Main Street across from the Greyhound Bus Station and leaned against a chain link fence. Appellant Richard Miller, who was walking southbound on Main Street, approached Detective Leavitt and asked him for money. When Detective Leavitt told Miller that he would not give him any money, Miller put his arm around Detective Leavitt and invited him to get a drink.

Miller stood to the left of Detective Leavitt with his right arm around Detective Leavitt's shoulders. Miller then pulled Detective Leavitt closer to him, quickly reached his hand into Detective Leavitt's pocket, and took the twenty dollars. Miller then loosened his grip on Detective Leavitt and again asked for money. Detective Leavitt said that he could not give Miller any money because his money was gone. The undercover arrest team then converged on the location and took Miller into custody.

The State charged Miller, by information, with larceny from the person. After a two-day trial, the jury convicted Miller, and the district court sentenced him to a maximum of 32 months and a minimum of 12 months imprisonment. On appeal, Miller argues that he was entrapped, that the prosecutor impermissibly commented on his decision not to testify, and that the prosecutor committed other misconduct.

## DISCUSSION

### Miller was not entrapped

Miller argues that police officers entrapped him by improperly tempting him with exposed money and a helpless victim. We disagree.

" 'The entrapment defense is made available to defendants not to excuse their criminal wrongdoing but as a prophylactic device designed to prevent police misconduct.' "[1] " '[E]ntrapment encompasses two elements: (1) an opportunity to commit a crime is presented by the state (2) to a person not predisposed to commit the act.' "[2] "[T]he Government may use undercover agents to enforce

---

[1]*Foster v. State,* 116 Nev. 1088, 1092, 13 P.3d 61, 64 (2000) (quoting *Shrader v. State,* 101 Nev. 499, 501, 706 P.2d 834, 835 (1985)).

[2]*DePasquale v. State,* 104 Nev. 338, 340, 757 P.2d 367, 368 (1988) (quoting *Shrader,* 101 Nev. at 504, 706 P.2d at 837). We note that there has been

the law.''[3] Nevertheless, undercover agents "may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute.''[4]

In *DePasquale v. State,* we discussed our prior entrapment jurisprudence where an undercover officer posed as a decoy.[5] We cited three earlier cases that collectively held that the defendant was entrapped where the undercover decoy "was apparently helpless, intoxicated, and feigned unconsciousness with cash hanging from his pocket.''[6] Specifically, we noted that the "degree of vulnerability, exemplified in [those prior cases] by the decoy's feigned lack of consciousness, . . . cloaks any suggestion of the defendant's predisposition.''[7]

However, in *DePasquale,* we held that the defendant was not entrapped when he stole from a female undercover police officer who was walking along open sidewalks around a casino with money zipped into her purse.[8] Thus, we have drawn a clear line between a realistic decoy who poses as an alternative victim of potential crime[9] and the helpless, intoxicated, and unconscious decoy with money hanging out of a pocket.[10] The former is permissible undercover police work, whereas the latter is entrapment.

*The opportunity presented to commit a crime was not improper*

The theft in this case occurred across from the Greyhound Bus Station at the 200 block of South Main Street in Las Vegas. Twenty one-dollar bills were folded inside the breast pocket of Detective

some inconsistency in the elements of entrapment in our prior jurisprudence. To correct that inconsistency, we reaffirm the two-part entrapment test as clarified by *DePasquale* and *Foster,* 116 Nev. at 1091, 13 P.3d at 64. To the extent that our opinions in *Shrader, Moreland v. State,* 101 Nev. 455, 705 P.2d 160 (1985), *Oliver v. State,* 101 Nev. 308, 703 P.2d 869 (1985), *Moore v. State,* 93 Nev. 645, 572 P.2d 216 (1977), and *In re Wright,* 68 Nev. 324, 232 P.2d 398 (1951), are inconsistent with the entrapment standard set forth in this opinion, they are overruled.

[3]*Jacobson v. United States,* 503 U.S. 540, 548 (1992).

[4]*Id.*

[5]104 Nev. at 340-41, 757 P.2d at 368-69.

[6]*Id.*

[7]*Id.*

[8]*Id.* at 341, 757 P.2d at 369.

[9]*Id.*

[10]*Sheriff v. Hawkins,* 104 Nev. 70, 73, 752 P.2d 769, 771 (1988).

Leavitt's flannel shirt so that only the tips of the bills were exposed. Miller, who was walking southbound on Main Street, approached Detective Leavitt and asked him for money. When Detective Leavitt told Miller that he would not give him any money, Miller put his arm around Detective Leavitt and invited him to get a drink. Miller stood to the left of Detective Leavitt with his right arm around Detective Leavitt's shoulders. Miller then pulled Detective Leavitt closer to him, quickly reached his hand into Detective Leavitt's pocket, and took the twenty dollars.

The police committed no misconduct in this operation. The opportunity presented was sufficient to lead to a criminal act only by a person predisposed to commit a crime. Though a suspect is entrapped when the decoy officer poses as an unconscious vagrant with exposed money hanging from his pockets,[11] Detective Leavitt did not feign unconsciousness nor was his money readily accessible. Only a portion of the bills were exposed; a passerby could see the edges of currency, but not the denominations.[12] Detective Leavitt did not entice Miller into stealing the money. Rather, Miller approached Detective Leavitt and asked him for money. When Detective Leavitt refused to give him money, Miller picked his pocket.

*Miller was predisposed to commit larceny from the person*

It is clear that Miller was predisposed to commit larceny from the person. We have recognized five factors that, though not exhaustive, are helpful to determine whether the defendant was predisposed: (1) the defendant's character, (2) who first suggested the criminal activity, (3) whether the defendant engaged in the activity for profit, (4) whether the defendant demonstrated reluctance, and (5) the nature of the government's inducement.[13] "*Of these five factors, the most important is whether the defendant demonstrated reluctance which was overcome by the government's inducement.*"[14]

Miller's character is unclear from the record, but it is clear that Miller initiated the conversation and engaged in the larceny for profit. Furthermore, Miller exhibited no reluctance about his actions. Finally, the critical balance between government inducement and Miller's reluctance weighs in favor of predisposition

---

[11]*DePasquale,* 104 Nev. at 340-41, 757 P.2d at 368-69.

[12]*See id.* at 341, 757 P.2d at 369 (noting that exposed money was insufficient to entrap the suspect because exposed money merely provided an alternative victim for potential crime).

[13]*Foster,* 116 Nev. at 1093, 13 P.3d at 64.

[14]*Id.* (emphasis added) (quoting, with approval, language from jury instruction).

here. Miller approached Detective Leavitt, initiated a conversation, and asked for money. When Detective Leavitt told Miller he would not give him any money, Miller picked his pocket. These facts demonstrate a predisposition to commit the crime of larceny from the person. Since Miller was predisposed to commit the crime, he was not entrapped.[15]

### *The State did not improperly comment on Miller's failure to testify*

Miller argues that he is entitled to a new trial because the State improperly commented on his right not to testify. We disagree.

During opening statements, the prosecutor told the jury that the defense was not obligated to present evidence at trial: "[T]he State has the burden beyond a reasonable doubt, and the Defendant is presumed innocent, they don't have to put on any case. They could sit there entirely, and you would be left to judge whether we have met our burden based only on the State's case." Defense counsel did not object to the statement.

On appeal, Miller argues that the statement "detrimentally minimized the State's burden to subsequently prove Mr. Miller's predisposition to commit [a] crime *prior* to contact with government agents." We disagree.

Initially, we note that Miller has waived the opportunity to challenge the prosecutor's statement on appeal. In *Gallego v. State,* we reiterated that "[f]ailure to object during trial generally precludes appellate consideration of an issue."[16] Miller concedes that trial counsel did not object to the allegedly improper statements. Thus, Miller has waived appellate review.

In *Ringle v. Bruton,* we held that reviewing only objected-to misconduct ensures the accuracy of our decisions in two ways.[17] First, such review restricts us, properly, to deciding actual controversies.[18] Second, judicial resources are conserved by encouraging trial counsel to take issue with inappropriate conduct at a time when the conduct can be corrected.[19]

---

[15]*Id.* at 1094-95, 13 P.3d at 65-66.

[16]117 Nev. 348, 365, 23 P.3d 227, 239 (2001).

[17]120 Nev. 82, 94-95, 86 P.3d 1032, 1040 (2004).

[18]*Id.; see also Beccard v. Nevada National Bank,* 99 Nev. 63, 65-66, 657 P.2d 1154, 1156 (1983) ("The failure to object to allegedly prejudicial remarks at the time an argument is made, and for a considerable time afterwards, strongly indicates that the party . . . did not consider the arguments objectionable at the time they were delivered, but made that claim as an afterthought.").

[19]*Ringle,* 120 Nev. at 95, 86 P.3d at 1040.

Timely objections enable the district court to instruct the jury to disregard improper statements, thus remedying any potential for prejudice.[20] Judicial economy requires that this court encourage good trial practice, and granting new trials for error that could have been corrected with a simple objection by an alert attorney does not encourage good trial practice. As in *Ringle,* judicial economy militates against finding prejudice in a statement so inconsequential as to warrant no objection below.

Nevertheless, we may still review plain error "affecting [the defendant's] substantial rights."[21] A plain error affects substantial rights if it " 'had a prejudicial impact on the verdict when viewed in context of the trial as a whole.' "[22] Miller bears the burden to prove that the error was prejudicial.[23] Miller merely asserts that the prosecutor's statements were error; he fails to demonstrate that the error was prejudicial. Thus, Miller has failed to meet his burden.

*The State did not commit prosecutorial misconduct by implying that Miller was dangerous and that he preyed upon vulnerable persons*

Miller argues that the State committed prosecutorial misconduct by referring to him as dangerous during opening statements and by suggesting during closing argument that he was a predator. We disagree.

" '[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.' "[24] We will not order a new trial on the grounds of prosecutorial misconduct unless the misconduct is "clearly demonstrated to be substantial and prejudicial."[25]

[20]*Id.*

[21]NRS 178.602; *Rowland v. State,* 118 Nev. 31, 38, 39 P.3d 114, 118 (2002).

[22]*Rowland,* 118 Nev. at 38, 39 P.3d at 118 (quoting *Libby v. State,* 109 Nev. 905, 911, 859 P.2d 1050, 1054 (1993), *vacated on other grounds,* 516 U.S. 1037 (1996)).

[23]*Gallego,* 117 Nev. at 365, 23 P.3d at 239.

[24]*Evans v. State,* 112 Nev. 1172, 1204-05, 926 P.2d 265, 286 (1996) (quoting *United States v. Young,* 470 U.S. 1, 11 (1985)).

[25]*Sheriff v. Fullerton,* 112 Nev. 1084, 1098, 924 P.2d 702, 711 (1996).

*Opening statement*

During his opening statement, the prosecutor told the jury that the surveillance team watched the decoy constantly because the "officer's safety is of paramount importance . . . because it's dangerous. An officer can get shot or stabbed." Miller argues that the statement was improper because it argued facts not in evidence and improperly appealed to juror emotion. We decline to consider this issue because Miller failed to object below and therefore waived his right to appellate review. Further, Miller has made no showing that the statement constituted plain error.

*Closing argument*

During his closing argument, the prosecutor told the jury that "this man was preying on the citizens of Nevada, and maybe people who are tourists and visitors. He was across from the Greyhound Bus Station looking for people to prey upon." Defense counsel objected, and the following argument ensued:

> [DEFENSE COUNSEL]: Objection, there wasn't any evidence as to whether or not he was looking around for people to prey upon.
>
> THE COURT: I don't recall hearing any.
>
> [PROSECUTOR]: This is argument, Your Honor.

The district court neither sustained nor overruled the objection and the prosecutor continued his closing argument.

We conclude that this statement does not constitute prejudicial error. "A prosecutor may not argue facts or inferences not supported by the evidence."[26] Nevertheless, the prosecutor may "argue inferences from the evidence and offer conclusions on contested issues."[27] Furthermore, other jurisdictions have held that " 'unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.' "[28]

In this case, Miller was charged with larceny from the person, and the evidence supported the State's characterization of Miller as someone who preyed upon others by stealing from them. Thus, we conclude that any error in the statement was harmless.

[26]*Williams v. State,* 103 Nev. 106, 110, 734 P.2d 700, 703 (1987).

[27]*Jones v. State,* 113 Nev. 454, 467, 937 P.2d 55, 63 (1997).

[28]*U.S. v. Tisdale,* 817 F.2d 1552, 1555 (11th Cir. 1987) (quoting *United States v. Windom,* 510 F.2d 989, 994 (5th Cir. 1975)).

## CONCLUSION

We conclude that Miller was not entrapped because he was pre-disposed to commit the crime of larceny from the person. Furthermore, the State did not improperly comment on Miller's failure to testify, nor did the State commit prosecutorial misconduct by implying that Miller was dangerous and preyed upon vulnerable persons. Accordingly, we affirm the conviction.