RUFUS LANE DANIELS, aka DANIEL RUFUS, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 42545

April 28, 2005                                    110 P.3d 477

*Philip J. Kohn,* Public Defender, and *Kedric A. Bassett,* Deputy Public Defender, Clark County, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *Martin W. Hart,* Deputy District Attorney, Clark County, for Respondent.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

*Per Curiam:*

This appeal arises out of an undercover decoy program initiated by the Las Vegas Metropolitan Police Department (LVMPD). As part of the decoy operation, Detective Jason Leavitt disguised himself as an intoxicated vagrant to blend in with transient persons that reside in certain areas of Las Vegas.

On July 1, 2003, Detective Leavitt dressed in tan pants, a white t-shirt, a sports coat, and a baseball cap. He carried a single-fold wallet in the breast pocket of his sports coat. The wallet contained twenty one-dollar bills. Detective Leavitt testified that the wallet extended from his pocket approximately 1½ inches and that someone standing close to him could see the edges of the money.

As part of his disguise, Detective Leavitt rubbed charcoal on his face to appear dirty and wiped beer on his neck to give off the

odor of alcohol. He also walked with a limp and carried a can of beer to appear intoxicated. Detective Leavitt positioned himself on the corner of 7th and Fremont Streets and leaned against a power box at that intersection.

Appellant Rufus Daniels approached Detective Leavitt and showed him a silver charm necklace. Daniels told Detective Leavitt to take a look at the necklace. Detective Leavitt responded that he did not want to look at the necklace and pushed Daniels' arm away. Daniels then thrust his hand back into Detective Leavitt's face, using more force than before. Daniels reiterated that he should take a look at the necklace. Detective Leavitt testified that Daniels was using enough force to push his head back and that Detective Leavitt's own hands were against his face as he attempted to push Daniels away. Detective Leavitt testified that the altercation made him nervous because he had been attacked on prior undercover investigations.

While Daniels pushed the necklace into Detective Leavitt's face with one hand, he grabbed the wallet with the other and hid the wallet on his person. Detective Leavitt accused Daniels of taking his money, but Daniels replied that he did not know what Leavitt was talking about. Daniels then crossed the street where the arrest team apprehended him in a motel parking lot. Daniels told the officers that he had hidden the wallet under his shirt and that he knew what he did was wrong.

The State charged Daniels, by information, with robbery and a lesser-included charge of larceny from the person. After a two-day trial, the jury convicted Daniels of robbery, and the district court sentenced him to 120 months imprisonment with the possibility of parole after 24 months. On appeal, Daniels argues that he was entrapped and that there was insufficient evidence presented at trial to convict him of robbery.

## DISCUSSION

*Daniels was not entrapped*

Daniels argues that police officers entrapped him by improperly tempting him with exposed money and a helpless victim. We disagree.

We addressed a similar entrapment claim in *Miller v. State.*[1] In *Miller,* we reiterated that the entrapment defense requires proof of two elements: (1) the State presented the opportunity to commit a

---

[1] 121 Nev. 92, 95, 110 P.3d 53, 56 (2005).

crime, and (2) the defendant was not otherwise predisposed to commit the crime.[2] The entrapment defense represents the necessary balance between the permissible use of undercover officers to investigate crimes and the prohibition against inducing an innocent person to commit a crime.[3] Where the State uses undercover officers as decoys, we have "drawn a clear line between a realistic decoy who poses as an alternative victim of potential crime and the helpless, intoxicated, and unconscious decoy with money hanging out of a pocket. The former is permissible undercover police work, whereas the latter is entrapment."[4]

### *The opportunity presented to commit a crime was not improper*

The altercation in this case occurred at the corner of 7th and Fremont Streets in Las Vegas. Detective Leavitt posed as a transient to blend into the transient community that lived in that area. Daniels approached Leavitt and showed him a silver charm necklace. Daniels told Leavitt to take a look at the necklace. Leavitt responded that he did not want to look at the necklace and pushed Daniels' arm away. Daniels then thrust his hand back into Detective Leavitt's face and grabbed the wallet with his other hand.

The police committed no misconduct in this operation. The opportunity presented was sufficient to lead to a criminal act only by a person predisposed to commit a crime. Though a suspect is entrapped where the decoy officer poses as an unconscious vagrant with exposed money hanging from his pockets,[5] Detective Leavitt did not feign unconsciousness and his money was not readily accessible. Approximately 1½ inches of his wallet was exposed and showed the edges of currency, but not the denominations.[6] Detective Leavitt did not entice Daniels into stealing the money. Rather, Daniels approached Detective Leavitt on his own accord, shoved a necklace in Detective Leavitt's face, and grabbed Detective Leavitt's wallet.

This case is closely analogous to both *Miller*[7] and *DePasquale v. State*.[8] Here, the decoy disguised himself to blend into the commu-

---

[2]*Id.*

[3]*Jacobson v. United States,* 503 U.S. 540, 548 (1992).

[4]*Miller,* 121 Nev. at 96, 110 P.3d at 56 (footnotes omitted).

[5]*DePasquale v. State,* 104 Nev. 338, 340-41, 757 P.2d 367, 368-69 (1988).

[6]*See id.* at 341, 757 P.2d at 369 (noting that exposed money was insufficient, standing alone, to entrap the suspect because exposed money merely provided an alternative victim for potential crime).

[7]121 Nev. at 96-97, 110 P.3d at 56-57.

[8]104 Nev. at 341, 757 P.2d at 369.

nity that he was patrolling. The decoy presented an alternative target for potential thieves without posing as a helpless victim. Daniels decided on his own to approach the decoy and to steal his money. Thus, there was no entrapment.

### Daniels was predisposed to commit robbery

It is clear that Daniels was predisposed to commit robbery. We have recognized five factors that, though not exhaustive, are helpful to determine whether the defendant was predisposed: (1) the defendant's character, (2) who first suggested the criminal activity, (3) whether the defendant engaged in the activity for profit, (4) whether the defendant demonstrated reluctance, and (5) the nature of the government's inducement.[9] "*Of these five factors, the most important is whether the defendant demonstrated reluctance which was overcome by the government's inducement.*"[10]

Daniels' character is unclear from the record, but it is clear that Daniels initiated contact with Detective Leavitt and engaged in the robbery for profit. Furthermore, Daniels exhibited no reluctance about his actions until after he had been apprehended. Finally, the critical balance between government inducement and Daniels' reluctance weighs in favor of predisposition here. Daniels approached Detective Leavitt, initiated a conversation about the silver necklace, refused to leave when asked, shoved one hand into Detective Leavitt's face to distract him, and took Detective Leavitt's wallet with his other hand. These facts demonstrate a predisposition to commit the crime of robbery. Since Daniels was predisposed to commit the crime, he was not entrapped.[11]

### The district court properly admitted prior conviction evidence to show predisposition

Daniels argues that the trial court abused its discretion by admitting a judgment of conviction from a 1993 burglary he committed in California. Daniels argues that the conviction was insufficient to indicate a predisposition to commit robbery. We disagree.

"The decision to admit or exclude evidence of prior offenses is within the discretion of the trial court."[12] "[T]hat determination

---

[9]*Foster v. State,* 116 Nev. 1088, 1093, 13 P.3d 61, 64 (2000).

[10]*Id.* (emphasis added) (quoting, with approval, language from jury instruction).

[11]*Id.* at 1094-95, 13 P.3d at 65-66.

[12]*Owens v. State,* 96 Nev. 880, 884, 620 P.2d 1236, 1239 (1980).

will be reversed only upon a clear showing of abuse."[13] The judgment of conviction was relevant to Daniels' assertion that he was not predisposed to commit robbery. Daniels put his predisposition to commit robbery in issue when he raised the affirmative defense of entrapment.[14]

Furthermore, the judgment of conviction was not too stale to impeach Daniels' credibility. NRS 50.095 allows for the impeachment of a witness with evidence of a felony conviction if 10 years or less have elapsed since the termination of his confinement, parole, probation, or sentence for that conviction. In using that statute as a guide, we conclude that the district court properly admitted the judgment of conviction because it was used to attack Daniels' credibility and less than 10 years had elapsed since the termination of Daniels' sentence for that crime.

*The State presented sufficient evidence to convict Daniels of robbery*

Daniels argues that there was insufficient evidence presented at trial to show that he used force or the threat of force to take Detective Leavitt's wallet. Thus, Daniels argues that he could not have been guilty of robbery. We disagree.

In relevant part, NRS 200.380(1) defines robbery as the "unlawful taking of personal property . . . by means of force or violence or fear of injury, immediate or future, to his person or property." "A taking is by means of force or fear if force or fear is used to: (a) Obtain or retain possession of the property; (b) Prevent or overcome resistance to the taking; or (c) Facilitate escape."[15] Daniels argues that he did not commit robbery because he did not attack Detective Leavitt with his hands or fists. This argument is without merit.

"The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property."[16] Here, Daniels shoved his hand into Detective Leavitt's face in order to "show" him the necklace. Detective Leavitt testified that Daniels used such force that Detective Leavitt's own hands were pressed against his face as he attempted to push Daniels away. Detective Leavitt further testified that the altercation made him nervous because he had been attacked numerous times in similar altercations while acting in an undercover capacity.

We conclude that Daniels' actions fit within the definition of robbery. Daniels used force and the threat of force to prevent De-

---

[13]*Yates v. State,* 95 Nev. 446, 450, 596 P.2d 239, 242 (1979).

[14]*Foster,* 116 Nev. at 1094, 13 P.3d at 65.

[15]NRS 200.380(1).

[16]*Id.*

tective Leavitt from noticing or resisting the taking. Having determined that Daniels' actions fit within the statute, the next question is whether sufficient evidence was presented at trial to find Daniels guilty of robbery.

In determining the sufficiency of the evidence below, we consider "whether the jury, acting reasonably, could have been convinced beyond a reasonable doubt of the defendant's guilt."[17] The critical question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[18]

Sufficient evidence was presented at trial to convict Daniels of robbery. The jury heard Detective Leavitt testify that Daniels forced his hand into Detective Leavitt's face and that the contact caused Detective Leavitt to be in apprehension of violence. The jury also heard that while his hand was in Detective Leavitt's face, Daniels took the wallet from Detective Leavitt's breast pocket. Under the above test, this evidence was sufficient to sustain a robbery conviction.

## *CONCLUSION*

We conclude that Daniels was not entrapped because he was predisposed to commit robbery. Furthermore, the State presented sufficient evidence at trial to convict Daniels of robbery. Accordingly, we affirm the conviction.

---

[17]*Braunstein v. State,* 118 Nev. 68, 79, 40 P.3d 413, 421 (2002).

[18]*Koza v. State,* 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).