140 Nev., Advance Opinion 71

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

KENNETH RAY JOSEPH PINNEY, JR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 87090-COA

FILED

NOV 21 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of home invasion while in possession of a deadly weapon, battery with the use of a deadly weapon, and residential burglary while in possession of a deadly weapon. Second Judicial District Court, Washoe County; Kathleen A. Sigurdson, Judge.

*Reversed and remanded.*

Evelyn Grosenick, Public Defender, and Kathryn E. Reynolds, Chief Deputy Public Defender, Washoe County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, Jennifer P. Noble, Chief Deputy District Attorney, and Marilee Cate, Deputy District Attorney, Washoe County,
for Respondent.

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

24-44365

*OPINION*

PER CURIAM:

The Nevada Supreme Court has recognized the importance of a defendant's ability to present evidence of self-defense, including evidence of prior violent acts by an alleged victim. Under *Burgeon v. State*, 102 Nev. 43, 714 P.2d 576 (1986), the victim's prior violent acts may be admitted when the defendant raises a self-defense claim and has knowledge of those acts. Though the State argues that *Tinch v. State*[1] modified or altered these requirements, we conclude that *Burgeon* remains the controlling standard for trial courts to evaluate the defendant's request to admit a victim's prior violent acts in self-defense cases. Here, because the district court applied the incorrect standard in excluding all evidence of the victim's prior violent acts, the court abused its discretion as a matter of law. Further, given the importance of self-defense in this case, we conclude that the error was not harmless. Therefore, we reverse the judgment of conviction and remand for a new trial.

*FACTS AND PROCEDURAL HISTORY*

The State charged appellant Kenneth Ray Joseph Pinney, Jr., with home invasion while in possession of a deadly weapon, battery with the use of a deadly weapon, and residential burglary while in possession of a deadly weapon. Pinney was alleged to have attacked his neighbor, Jorge Ramirez-More, with a knife on March 25, 2022. Pinney, a military veteran, asserted that he acted in self-defense, knowing that Ramirez-More was a convicted felon who had previously engaged in acts of violence.

---

[1]113 Nev. 1170, 946 P.2d 1061 (1997), *holding modified by Bigpond v. State*, 128 Nev. 108, 270 P.3d 1244 (2012).

(O) 1947B

Pinney filed a pretrial motion pursuant to NRS 48.045(2) to admit evidence of Ramirez-More's prior acts of violence against other residents of their apartment complex, which Pinney asserted was relevant to his self-defense claim. Shortly after, the State filed a pretrial motion to limit evidence of Ramirez-More's prior criminal convictions to the dates, locations, and number of convictions only. Ramirez-More had been convicted in 1985, pursuant to a single judgment of conviction, of five counts of sexual assault, one count of robbery, one count of burglary, and one count of battery with intent to commit a crime; he was also on lifetime parole. In its motion, the State argued the evidence should be limited because of the risk of unfair prejudice. Pinney filed a cross-motion to admit Ramirez-More's prior convictions, including the types of crimes and Ramirez-More's parole status, asserting that he knew Ramirez-More was a "violent felon" and that the convictions were relevant to how Pinney reacted to Ramirez-More's conduct on March 25.

At an evidentiary hearing on the parties' motions, Pinney argued that the admission of Ramirez-More's prior violent acts was governed by *Burgeon*. The State responded that Ramirez-More's acts must be assessed under *Tinch v. State*, 113 Nev. 1170, 946 P.2d 1061 (1997), which the State claimed modified *Burgeon*. The district court acknowledged both parties' positions but did not expressly say which standard it would apply. Pinney then presented three witnesses in support of his motion to admit Ramirez-More's prior violent acts. Aaron Waters, a resident of the apartment complex where the incident occurred, testified that Ramirez-More had threatened him "four or five" times and would say he was going to kill Waters. Teresa Jensen, the apartment manager, testified that she observed Ramirez-More threaten multiple people, including Waters and the

apartment maintenance man. Jensen stated that police were called on Ramirez-More "three or four" times within three months and that Ramirez-More "provoked" and "instigated a lot of problems" with other residents. Jensen began to explain what she had told Pinney about Ramirez-More's conduct when the State objected to her testimony as hearsay. Pinney responded that the statement went to Pinney's mental state at the time of the incident and not to the truth of the matter asserted, and so it was not hearsay. The district court sustained the State's objection.[2]

The final witness at the evidentiary hearing, Pinney, testified that he personally observed Ramirez-More threaten people with weapons "several" times. He described four specific incidents in detail. For the first incident, Pinney stated that Ramirez-More argued with another resident on the stairwell and "challeng[ed]" the resident to a fight while holding a "big kitchen knife" behind his back. For the second incident, Pinney observed Ramirez-More in the early morning hours yelling and waving a "hunting knife," which Ramirez-More turned on Pinney in a threatening manner when Pinney asked Ramirez-More to be quiet. For the third incident, Pinney testified that Ramirez-More ran down the apartment stairs with a wooden table leg approximately 12 to 18 inches long while yelling at another resident until that resident left in their vehicle and that Ramirez-More threw rocks at the vehicle. For the fourth incident, Pinney testified that Ramirez-More threatened him directly with a knife, saying that he would "teach [Pinney] a lesson," causing Pinney to call 9-1-1 and drive away. Pinney testified that he personally observed about seven incidents overall

_____

[2]The State made several objections on the same grounds throughout the evidentiary hearing and trial during Jensen's and Pinney's testimony, and the district court sustained most of those objections as well.

in which Ramirez-More was violent with other residents of the apartment complex. He also stated that he knew Ramirez-More had been convicted of a "sexual offense" and "a violent thing" but did not know the names of the convictions.

The district court denied Pinney's motion to admit evidence of Ramirez-More's prior violent acts. Relying solely upon the analysis outlined in *Tinch*, the district court summarily found that Pinney failed to satisfy the *Tinch* factors and further found that "the testimony provided to the [c]ourt was inconsistent, and therefore it is inadmissible. By default, inconsistency makes the testimony lack credibility and thus it is not clear and convincing." The court did not identify whose testimony was inconsistent or not credible. The district court also determined that the evidence was "irrelevant because it has no bearing on this case." As for the State's motion to limit the evidence of Ramirez-More's prior convictions to their dates, numbers, and locations, the district court granted the motion after finding the convictions did not hold any probative value due to their age.

The matter proceeded to a jury trial. Ramirez-More testified that the incident began when he stood at the threshold of Pinney's apartment and told Pinney not to give dog food to his cat. Ramirez-More stated that Pinney picked up a knife, threatened him, and followed him back into his own apartment, causing Ramirez-More to grab a "marker" in self-defense. Pinney left, and Ramirez-More followed Pinney back to his apartment to tell him again to stop feeding his cat dog food. Ramirez-More testified that he went back to his own apartment and felt Pinney kicking in the door, and Pinney then entered the apartment and started slashing at

Ramirez-More with a sword. Ramirez-More testified that he had no knives or weapons in his apartment, except for a dull butter knife.

Pinney, who testified in his own defense, stated that Ramirez-More entered his apartment and knocked down boxes near the door while threatening to kill Pinney and saying, "come over I've got something for you." Pinney further testified that he went to Ramirez-More's apartment without a weapon, and Ramirez-More then grabbed a large kitchen knife and started attacking Pinney, causing Pinney to retreat to his own apartment. When Pinney could not locate his phone, he believed that Ramirez-More had taken it, and so Pinney returned to Ramirez-More's apartment armed with a knife but only yelled at Ramirez-More from the door before retreating back to his apartment.

A surveillance video in the hallway outside their apartments showed Ramirez-More and Pinney going back and forth between the two apartments, but it did not capture anything inside either apartment. Ramirez-More eventually left the apartment complex, walked down the street to a store, and called 9-1-1. When the police arrived, Ramirez-More had lacerations on his hand and torso, and Pinney had injuries on his face consistent with knife wounds.

The parties settled jury instructions, and the joint appendix submitted in this case does not reflect that the State objected to Pinney's self-defense jury instruction as applied to each of the charges. During closing arguments, both parties replayed the hallway video and offered competing interpretations of the evidence. Specifically, the State argued that Pinney did not act in self-defense because he first challenged Ramirez-More to a fight while holding a knife inside Ramirez-More's apartment; Pinney argued that he acted in self-defense because Ramirez-More

threatened and attacked him with a knife first. The jury found Pinney guilty on all charges, and he was sentenced to a total aggregate prison term of approximately 11 to 28 years. This appeal followed.

*ANALYSIS*

On appeal, Pinney argues the district court erred by excluding or limiting evidence offered to support his claim of self-defense, specifically evidence of Ramirez-More's prior violent acts and prior convictions. Although Pinney initially moved to admit evidence of the prior violent acts under NRS 48.045(2), the statute governing the admission of other bad act evidence, he made clear that this evidence went to his theory of self-defense. The district court precluded all evidence of Ramirez-More's prior violent acts after applying *Tinch*, but it did not consider or apply the test for admitting a victim's prior violent acts in support of a self-defense claim as stated in *Burgeon*. Likewise, the district court limited the evidence of Ramirez-More's prior convictions without considering their relevance to Pinney's self-defense theory. The district court's decision to admit or exclude evidence is within its discretion and will only be reversed upon a clear showing of abuse. *Daniels v. State*, 121 Nev. 101, 105-06, 110 P.3d 477, 480 (2005).

The Nevada Supreme Court has previously considered the admissibility of specific acts of violence by a victim when offered to support a claim of self-defense. In *Burgeon*, the court determined such evidence was relevant to a claim of self-defense and admissible if the defendant had knowledge of the violent acts. 102 Nev. at 45-46, 714 P.2d at 578; *see also State v. Sella*, 41 Nev. 113, 138, 168 P. 278, 286 (1917) (noting the "general rule" that "when self-defense is an issue and it is necessary to show the state of mind of the slayer at the time of the commission of the offense, specific acts of violence of the deceased, which are then known to the slayer or have

been communicated to him, which tend to show that the deceased was a violent and dangerous [person], may be shown for the purpose of establishing self-defense"). The court ultimately concluded that, because Burgeon did not have knowledge of the acts, excluding the victim's prior acts was proper because they could not establish the reasonableness of Burgeon's fear or state of mind. *Burgeon*, 102 Nev. at 46, 714 P.2d at 578.

In 1997, approximately a decade after *Burgeon* was decided, *Tinch* was published and clarified the general test for admitting prior uncharged acts pursuant to NRS 48.045(2). NRS 48.045(2) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." However, such evidence may be admissible for a nonpropensity purpose "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[3] *Id.* For other act evidence to be deemed admissible under *Tinch*, the trial court must determine that the other act is relevant to the charges, that the act is proven by clear and convincing evidence, and that the probative value of the act "is not substantially outweighed by the danger of unfair prejudice." 113 Nev. at 1176, 946 P.2d at 1064-65; *see also Bigpond v. State*, 128 Nev. 108, 116, 270 P.3d 1244, 1249 (2012) (providing that evidence of other acts "may be admitted under NRS 48.045(2) for a relevant nonpropensity purpose other than those listed in the statute").

The State acknowledges the holding in *Burgeon* but contends *Tinch* modified that holding such that the requirements outlined in *Tinch* and *Bigpond* govern a defendant's request to admit a victim's prior violent

---

[3]The statute was enacted in 1971, and subsection 2 has remained substantively unchanged.

acts to support a self-defense claim. We disagree. *Tinch* addressed the admission of uncharged bad acts committed by the defendant and a witness, and *Bigpond* examined the admission of the defendant's prior acts of domestic violence; neither case involved self-defense or the victim's prior acts of violence. Further, several post-*Tinch* decisions evaluate the admission of a victim's prior violent acts in self-defense cases under the requirements in *Burgeon*.

For example, in *Petty v. State*, the defendant wanted to present the victim's two convictions for robbery and pointing a deadly weapon at a person to support his claim of self-defense, but the district court disallowed the evidence. 116 Nev. 321, 326, 997 P.2d 800, 803 (2000). The supreme court assessed Petty's claim under *Burgeon*, rather than *Tinch*, reasoning that "[a]s we stated in *Burgeon*, the accused may present evidence of specific acts to show the accused's state of mind at the time of the commission of the crime only if the accused had knowledge of the specific act." *Id.* at 327, 997 P.2d at 803. The court determined that because Petty was aware of the victim's prior robbery conviction, that conviction was "admissible for purposes of showing the reasonableness of [Petty's] state of mind."[4] *Id.*

The supreme court continued to apply *Burgeon* in *Daniel v. State*, 119 Nev. 498, 78 P.3d 890 (2003). In that case, the supreme court

---

[4]In *Petty*, the supreme court also held—in conjunction with its reasoning in *Burgeon*—that the victim's prior violent acts were also admissible pursuant to NRS 48.055(2). 116 Nev. at 327, 997 P.2d at 803. That statute provides that "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof of specific instances of his conduct may be made on direct or cross-examination." However, this portion of the analysis was subsequently disavowed because "the character of the victim is not an essential element of self-defense." *Daniel v. State*, 119 Nev. 498, 514, 78 P.3d 890, 901 (2003).

reiterated that "evidence of specific acts showing that the victim was a violent person is admissible if a defendant seeks to establish self-defense *and was aware of those acts.*" *Id.* at 515, 78 P.3d at 902 (citing *Burgeon*, 102 Nev. at 45-46, 714 P.2d at 578). Relying on *Burgeon* and *Petty*, the supreme court held that "extrinsic evidence of a victim's specific conduct known to the defendant is admissible in the form of prior convictions" and "in the form of corroborating testimony." *Id.* at 516, 78 P.3d at 902. "[W]hen a defendant claims self-defense and knew of relevant specific acts by a victim, evidence of the acts can be presented through the defendant's own testimony, through cross-examination of a surviving victim, and through extrinsic proof." *Id.*

In addition to supreme court precedent, which this court must apply, *see Eivazi v. Eivazi*, 139 Nev., Adv. Op. 44, 537 P.3d 476, 487 n.7 (Ct. App. 2023), there are additional reasons why *Tinch* is inapplicable under these circumstances. The second *Tinch* factor requires the prior act "to be proven by clear and convincing evidence." 113 Nev. at 1176, 946 P.2d at 1064-65. However, a criminal defendant is entitled to present a self-defense theory "so long as there is some evidence, no matter how weak or incredible, to support it." *Williams v. State*, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983). Requiring a defendant to prove a victim's violent acts by clear and convincing evidence under *Tinch* may also improperly limit the defendant's ability to present evidence entitling them to a self-defense jury instruction. *See Rosas v. State*, 122 Nev. 1258, 1262, 147 P.3d 1101, 1104 (2006) (concluding the defendant was entitled to a jury instruction on self-defense because "some evidence" in the record supported a self-defense theory).

Further, "clear and convincing evidence can be provided by a [witness's] testimony alone." *Meek v. State*, 112 Nev. 1288, 1295, 930 P.2d

1104, 1108 (1996). Determining whether a witness's testimony proves a prior violent act by clear and convincing evidence often requires the district court to make a credibility determination. *See, e.g.*, *Chadwick v. State*, 140 Nev., Adv. Op. 10, 546 P.3d 215, 224-25 (Ct. App. 2024) (providing that a single witness's testimony as to the defendant's intoxication was sufficient to establish that act by clear and convincing evidence because "the district court had an opportunity to observe [the witness] and determine her credibility").

The problem with applying *Tinch* arises when it is the defendant who offers pretrial testimony regarding the victim's prior violent acts, which is often necessary to establish the defendant's knowledge under *Burgeon*. Applying *Tinch* in these circumstances would permit the trial court to exclude the defendant's testimony in support of their self-defense claim if the court found their testimony was not credible or did not prove the victim's prior violent acts by clear and convincing evidence. Such an exclusion—based on a pretrial determination of the *defendant's* credibility—infringes on the defendant's constitutionally protected right to testify in their own defense. *Rock v. Arkansas*, 483 U.S. 44, 53 n.10 (1987) (recognizing "that the right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right"). Excluding the defendant's evidence of self-defense on this basis also unconstitutionally precludes the defendant from establishing a complete defense and invades the province of the jury. *See Hoagland v. State*, 126 Nev. 381, 386, 240 P.3d 1043, 1047 (2010) ("The notion of fundamental fairness is interpreted as requiring that a defendant be 'afforded a meaningful opportunity to present a complete defense.'" (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984))); *see generally Washington v. State*, 112 Nev. 1067, 1073, 922 P.2d

547, 551 (1996) ("[I]n a case where there is conflicting [evidence] presented at trial, it is within the province of the jury to determine the weight and credibility of the testimony.").

Considering all of the above, we conclude *Tinch* did not alter established Nevada Supreme Court precedent governing the admission of a victim's violent acts when the defendant raises self-defense. Rather, *Burgeon* remains the controlling authority for admitting such evidence. We note that the admission of a victim's prior violent acts under *Burgeon* is still subject to general evidentiary requirements, such as relevance, consideration of unfair prejudice, and competence. *See* NRS 48.025; NRS 48.035; NRS 50.025. In addition, the decision to admit such acts remains within the district court's sound discretion, and we emphasize that the district court "should exercise care that the evidence of specific violent acts of the victim not be allowed to extend to the point that it is being offered to prove the victim acted in conformity with his violent tendencies." *Daniel*, 119 Nev. at 516, 78 P.3d at 902 (quoting *State v. Daniels*, 465 N.W.2d 633, 637 (Wis. 1991)). To further reduce the risk of prejudice or of such evidence being used for an improper propensity purpose, the district court may also, upon request from either party, provide a limiting instruction restricting the evidence to its proper scope. *See* NRS 47.110 (providing that when evidence is admitted for one purpose but is inadmissible for another purpose, the court, upon request, shall instruct the jury as to its proper scope).

In this case, the parties do not dispute that Pinney raised a self-defense claim, and the record amply illustrates Pinney's intent to admit Ramirez-More's prior violent acts in support of that claim. Under *Burgeon*, Ramirez-More's violent acts could have been admitted if Pinney had

knowledge of those acts or if those acts were communicated to him. 102 Nev. at 45-46, 714 P.2d at 578. Thus, we conclude the district court abused its discretion when it applied *Tinch* to exclude all evidence of Ramirez-More's violent acts.

Despite the misapplication of the *Tinch* standard, the improper exclusion of evidence only warrants reversal if the error was not harmless. *Dickey v. State*, 140 Nev., Adv. Op. 2, 540 P.3d 442, 450 (2024); *see also* NRS 178.598 (stating that any error that does not affect a defendant's substantial rights shall be disregarded). An error is harmless unless it "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Mclellan v. State*, 124 Nev. 263, 270, 182 P.3d 106, 111 (2008) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

We are not convinced that the district court's application of *Tinch* and subsequent exclusion of the four prior incidents known by Pinney—particularly Ramirez-More's history of threatening Pinney and others with knives—was harmless. Pinney and the State offered competing interpretations of the evidence, and the crux of Pinney's defense theory was his self-defense claim. His conviction fundamentally turned on the jury's determination of whether Pinney's use of force was reasonable under the circumstances. The defendant's credibility is a central consideration in self-defense cases, *see Pineda v. State*, 120 Nev. 204, 210, 88 P.3d 827, 832 (2004) ("By testifying that he took the life of [the victim] in self-defense, Pineda placed his credibility squarely in issue."), and the exclusion of Ramirez-More's prior violent acts inhibited the jury's assessment of Pinney's state of mind in reacting to Ramirez-More.

In addition, at the pretrial evidentiary hearing, Waters and Jensen also described specific incidents of violence by Ramirez-More.

However, we are unable to discern from the record on appeal whether those acts were admissible under *Burgeon*. Our inability stems at least in part from the exclusion of testimony at that hearing about Pinney's knowledge of those acts. When Pinney attempted to elicit testimony from the witnesses regarding what they told him about Ramirez-More's conduct, or when Pinney tried to testify about what others told him, the district court sustained the State's hearsay objections.

Hearsay is generally defined as "a statement offered in evidence to prove the truth of the matter asserted." NRS 51.035. Pinney's proffered testimony, however, went to his state of mind for purposes of his self-defense claim and was necessary to establish his knowledge under *Burgeon*. Therefore, the testimony was not hearsay because it was not offered to prove the truth of the matter asserted. Because of the objections and the court precluding the testimony, the record is not clear regarding what Pinney knew about Ramirez-More's history. And in the absence of a developed record or factual findings by the district court, we decline to determine in the first instance whether Pinney had knowledge of these prior violent acts to satisfy the *Burgeon* standard. *See Ryan's Express Transp. Servs., Inc. v. Amador Stage Lines, Inc.*, 128 Nev. 289, 299, 279 P.3d 166, 172 (2012) ("An appellate court is not particularly well-suited to make factual determinations in the first instance.").

Notwithstanding our inability to assess the exclusion of the violent acts observed by others, given that we are unable to conclude the district court's error was harmless due to the exclusion of Ramirez-More's violent acts known by Pinney, we reverse Pinney's judgment of conviction and remand the matter for a new trial.

Pinney also contends the district court erred in limiting the evidence of Ramirez-More's prior convictions. We agree. The admission of a victim's prior convictions to support a self-defense claim is likewise governed by *Burgeon*. *See Petty*, 116 Nev. at 327, 997 P.2d at 803. The district court abused its discretion by failing to evaluate the admission of Ramirez-More's prior convictions under that standard. The court determined that the convictions held "no probative value" based on the date of the convictions alone, but they were relevant and probative of Pinney's self-defense claim to the extent Pinney had knowledge of those convictions.[5] *Burgeon*, 102 Nev. at 45-46, 714 P.2d at 578; *Petty*, 116 Nev. at 327, 997 P.2d at 803. However, like the testimony regarding Ramirez-More's prior violent acts, the record on appeal is limited with respect to Pinney's knowledge of the prior convictions, and the district court did not make relevant factual findings. Thus, we decline to determine in the first instance if Ramirez-More's prior convictions were admissible pursuant to *Burgeon*.[6]

On remand, prior to retrial, the district court must permit Pinney and other witnesses to testify about the scope of Pinney's knowledge regarding Ramirez-More's violent acts, including his prior convictions, so

_____

[5]The record does not reflect when Ramirez-More was released from confinement on those convictions, which is also relevant when evaluating the convictions' probative value against the danger of unfair prejudice.

[6]We note that *Burgeon* does not control the admission of a victim's prior convictions when offered for purposes other than to support a self-defense claim, such as for impeachment. *See* NRS 50.095. To the extent Pinney attempted to introduce Ramirez-More's prior convictions for impeachment purposes, the State acknowledged the convictions were not too remote under NRS 50.095.

that the court may adequately determine whether those acts should be admitted under *Burgeon*. In addition, the district court must evaluate *each* alleged violent act for admission independently and determine, within its sound discretion, whether those acts are admissible. *See Petty*, 116 Nev. at 326-27, 997 P.2d at 803 ("The district court properly excluded evidence of the 1997 conviction, but abused its discretion by excluding the 1990 conviction evidence.").

## CONCLUSION

When a defendant moves to introduce a victim's prior violent acts in support of a self-defense claim, the acts may be admitted pursuant to *Burgeon* if the defendant had knowledge of those acts. Here, the district court abused its discretion by failing to determine whether Ramirez-More's prior acts and convictions were admissible pursuant to *Burgeon*. Because we cannot say the exclusion of Pinney's evidence was harmless in this case, we reverse Pinney's judgment of conviction and remand for a new trial.[7]

_____, C.J.
Gibbons

_____, J.
Bulla

_____, J.
Westbrook

---

[7]Insofar as Pinney raises other arguments not specifically addressed in this opinion, we have considered the same and conclude that they do not present a basis for relief or need not be addressed given the disposition of this appeal.